

FILED
RICHARD W. NAGEL
CLERK OF COURT
2018 FEB 15 AM 11: 38
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

UNITED STATES OF AMERICA

Plaintiff,

v.

**MARTIN NEFTALI AGUILAR-RIVERA (1)**
    a/k/a Jose Aguilar-Rivera
    a/k/a Evaristo Perez
    a/k/a Momia
    a/k/a Pelon

**JOSE BONILLA-MEJIA (2)**
    a/k/a Espia

**JUAN JOSE JIMENEZ-MONTUFAR (3)**
    a/k/a Chele Trece

**PEDRO ALFONSO OSORIO-FLORES (4)**
    a/k/a Smokey

**ISAIAS ALVARADO (5)**
    a/k/a Cabo

**CRUZ ALBERTO-ARBARNGAS (6)**
    a/k/a Cruz Alvarenga-Alberto
    a/k/a Cruz Octaviano Alberto-Alvarenga
    a/k/a Cruzito

**JOSE MANUEL ROMERO-PARADA (7)**
    a/k/a Russo

**JUAN JOSE ALVARENGA-ALBERTO (8)**
    a/k/a Sailen

**JUAN FLORES-CASTRO (9)**
    a/k/a Juan Pablo Guerra-Flores
    a/k/a Duende

CASE NO. 2:17-CR-164

CHIEF JUDGE SARGUS

## SECOND SUPERSEDING INDICTMENT

8 U.S.C. § 1326(a)
18 U.S.C. § 2
18 U.S.C. § 922(g)(5)(A)
18 U.S.C. § 924(a)(2)
18 U.S.C. § 924(c)(1)(A)
18 U.S.C. § 924(c)(1)(A)(i)
18 U.S.C. § 924(c)(1)(A)(ii)
18 U.S.C. § 924(j)(1)
18 U.S.C. § 1512(c)(2)
18 U.S.C. § 1959(a)(1)
18 U.S.C. § 1962(d)
18 U.S.C. § 2232(a)
21 U.S.C. § 841(a)(1)
21 U.S.C. § 841(b)(1)(C)
**FORFEITURE**

1

**JOSE DANIEL GONZALEZ-CAMPOS (10)**
    a/k/a Flaco

**JOSE SALVADOR GONZALEZ-CAMPOS**
        **(11)**
    a/k/a Danger

**JOSE MENDEZ-PERAZA (12)**
    a/k/a Juan Matias
    a/k/a Shadow

**ERASMO HUMBERTO LIMA-MARTINEZ**
        **(13)**
    a/k/a Tun Tun
    a/k/a Azul
    a/k/a Chino

**NEHEMIAS JOEL MARTINEZ-**
        **HERNANDEZ (14)**
    a/k/a Mysterio

**JOSE CARLOS MERCADO-CRESPIN (15)**
    a/k/a Payaso

**DENIS DONALDO FUENTES-AVILA (16)**

**DANIEL ALEXANDER DIAZ-ROMERO (17)**
    a/k/a Manchas

**GERARDO DAVILA-COLINDRES (18)**
    a/k/a Cuervo
    a/k/a Enano

**MARVIN OTERO-SERRANO (19)**
    a/k/a Vaca
    a/k/a Bandallero
    a/k/a Yankee

**JORGE ALBERTO LANDAVERDE (20)**
    a/k/a Grenas

**JOSE SALINAS-ENRIQUEZ (21)**
    a/k/a Martillo

**NELSON ALEXANDER FLORES (22)**
    a/k/a Mula

**CAROLINA GARCIA-MIRANDA (23)**
    a/k/a Mamayema,

        **Defendants.**

**THE GRAND JURY CHARGES:**

## COUNT ONE
### (Conspiracy to Commit Racketeering)

### The Enterprise

At all times relevant to this Second Superseding Indictment:

1.    Defendants **MARTIN NEFTALI AGUILAR-RIVERA**, a/k/a Momia, a/k/a Pelon, **JOSE BONILLA-MEJIA**, a/k/a Espia, **JUAN JOSE JIMENEZ-MONTUFAR**, a/k/a Chele Trece, **PEDRO ALFONSO OSORIO-FLORES**, a/k/a Smokey, **ISAIAS ALVARADO**, a/k/a Cabo, **CRUZ ALBERTO-ARBARNGAS**, a/k/a Cruzito, **JOSE MANUEL ROMERO-PARADA**, a/k/a Russo, **JUAN JOSE ALVARENGA-ALBERTO**, a/k/a Sailen, **JUAN FLORES-CASTRO**, a/k/a Duende, **JOSE DANIEL GONZALEZ-CAMPOS**, a/k/a Flaco, **JOSE SALVADOR GONZALEZ-CAMPOS**, a/k/a Danger, **JOSE MENDEZ-PERAZA**, a/k/a Shadow, **ERASMO HUMBERTO LIMA-MARTINEZ**, a/k/a Tun Tun, **NEHEMIAS JOEL MARTINEZ-HERNANDEZ**, a/k/a Mysterio, **JOSE CARLOS MERCADO-CRESPIN**, a/k/a Payaso, **DENIS DONALDO FUENTES-AVILA, DANIEL ALEXANDER DIAZ-ROMERO**, a/k/a Manchas, **GERARDO DAVILA-COLINDRES**, a/k/a Cuervo, a/k/a Enano, **MARVIN OTERO-SERRANO**, a/k/a Vaca, a/k/a Bandallero, **JORGE ALBERTO**

LANDAVERDE, a/k/a Grenas, JOSE SALINAS-ENRIQUEZ, a/k/a Martillo, NELSON ALEXANDER FLORES, a/k/a Mula, CAROLINA GARCIA-MIRANDA, a/k/a Mamayema, and others known and unknown to the grand jury, were members and associates of La Mara Salvatrucha.

2.    La Mara Salvatrucha, commonly known as MS-13, is a multi-national criminal organization composed primarily of immigrants or descendants of immigrants from El Salvador, Guatemala, and Honduras. Though estimates vary, MS-13 is believed to have 30,000 – 60,000 members around the world. The organization's leadership is based in El Salvador, where many of the gang's high-ranking members are imprisoned.

3.    The name "Mara Salvatrucha" is a combination of several slang terms. "Mara" is the El Salvadoran word for "gang." The phrase "Salvatrucha" is a combination of two words: "Salva" is an abbreviation for "Salvadoran," and "trucha" is a slang word for "fear us," "look out," or "heads up."

4.    MS-13 originated in the United States when El Salvadoran immigrants fled to this country to escape civil war in the 1980s. When these immigrants settled in Southern California, they formed MS-13, which is loosely affiliated with the Mexican Mafia, as a way to protect themselves from other street gangs in the Los Angeles area. MS-13 developed into a dangerous criminal organization that spread to other areas of the United States. A large-scale deportation effort resulted in many MS-13 members and associates being sent back to El Salvador, where the gang grew in size and strength. Thousands of individuals with ties to MS-13 have since entered the United States.

5.    In 2012, the United States government designated MS-13 as a "transnational criminal organization." It is the first and only street gang to receive that designation. MS-13 has

4

become one of the largest criminal organizations in the United States, with more than 10,000 members and associates operating in at least 40 states, including Ohio. MS-13's presence continues to grow in the Southern District of Ohio and around the country, in light of the organization's active recruitment efforts – which often target juveniles from El Salvador and other Latin American nations – and the regular flow of new, potential members from other states and foreign countries.

6.     In Ohio and elsewhere in the United States, MS-13 is organized into "cliques," which are smaller groups of MS-13 members and associates acting under the larger mantle of the organization and operating in a specific region, city, or part of a city. In order to organize and coordinate the many cliques comprising thousands of members located across the United States, MS-13 leadership in El Salvador has grouped the organization into regional "programs." This structure helps the gang run its operations. Specifically, organizing the various MS-13 cliques into programs facilitates the process of transmitting orders from leadership in El Salvador to cliques in the United States and sending money from cliques in the United States to leadership in El Salvador. MS-13 cliques work both independently and collectively, and generally operate under the umbrella rules of MS-13 leadership in El Salvador. The Columbus, Ohio clique of MS-13 is part of the East Coast Program.

7.     MS-13 members and associates of one or more cliques attend meetings to discuss, plan, and report on various topics, such as organizational and membership issues, disciplinary problems, recent and future acts of violence and other criminal activity, "green lights" (orders to kill particular individuals), law enforcement activity directed at MS-13 members and associates, and individuals suspected of cooperating with law enforcement. During such meetings, individual gang members and associates are expected to pay dues to support the organization.

5

8.    In addition to the regular payment of dues, MS-13 cliques raise money through various forms of criminal activity, including extortion and narcotics trafficking. The money generated through extortion, drug trafficking, and other unlawful activities is used to support MS-13's operations in both El Salvador and the United States. A portion of the funds that each clique generates is sent, usually by wire transfer and often through intermediaries, to MS-13 members and associates in El Salvador. Gang leaders use this money to purchase items used to engage in criminal activity (weapons, cell phones, and the like); to provide food, clothing, legal assistance, and other forms of aid to MS-13 members who are incarcerated or have been deported; and to support the families of MS-13 members who have been killed. Co-conspirators also use the money they generate to purchase firearms or drugs for the clique and to support gang members and associates imprisoned in the United States.

9.    In order to join MS-13, prospective members generally are required to complete an initiation process. Individuals in the first stage of the process are called "paros." A paro spends time with MS-13 members and is required to do whatever a "homeboy" or "chequeo" (see below) asks. During this period, the organization observes the "paro" for trustworthiness and loyalty. A prospective member who completes the paro stage becomes a "chequeo." A chequeo is permitted closer access to the gang, is observed for trustworthiness and loyalty, and is required to engage in more serious criminal activity on behalf of MS-13. A full member of MS-13 is called a "homeboy." To pass from the chequeo stage to homeboy status, a prospective member of MS-13 must engage in significant criminal activity, such as one or more homicides, on behalf of the organization. If and when a prospective member is elevated to homeboy status, the clique would hold a meeting, during which the individual would be "jumped in" to the gang. This process

involves multiple MS-13 members beating the new member with their hands and feet, usually while one of the clique leaders counts aloud slowly to thirteen.

10. MS-13 members have been known to signify their gang membership by getting tattoos. Such tattoos can be words or slogans – such as "Mara Salvatrucha," "MS," "MS-13," or "Laugh Now, Cry Later" – or symbols like the "devil's horns." Some MS-13 members have tattoos that signify their association with a particular clique. MS-13 colors generally are blue and white. MS-13 members and associates are not allowed to wear the color red, because red is the color of MS-13's chief rival, the 18th Street gang. MS-13 members sometimes mark their territory through the use of graffiti, though this is becoming less common because of the law enforcement attention it attracts. MS-13 members and associates refer to one another by their gang nicknames. In many instances, they do not know the real names of other gang members and associates. Some MS-13 members and associates are known by more than one nickname.

11. MS-13 has a set of rules that governs the conduct of the enterprise's members and associates. Among the topics that these rules address are organizational issues, dispute resolution, gang meetings, selection of members, the imperative of loyalty to MS-13, the need to take action against rival gang members and individuals who cooperate with law enforcement, the importance of committing crimes to support and enrich MS-13, and the requirement to coordinate with, and follow orders from, leadership in El Salvador. Members and associates who violate the rules are subject to discipline.

12. Violence is a central tenet of MS-13. The organization's motto, "mata, viola, controla," means "kill, rape, control." MS-13 members are expected to promote and protect the organization's reputation and status by any means necessary, such as by committing acts of intimidation and violence, up to and including murder. Targets of violence include rival gang

7

members, MS-13 members and associates who do not comply with the organization's rules, individuals who show disrespect to the gang or are otherwise perceived as a threat, and those suspected of cooperating with law enforcement. Historically, MS-13 members and associates have committed murders and other violent acts using machetes, knives, and similar bladed weapons in order to intimidate and instill fear in others.

13.     MS-13 members and associates in Ohio and elsewhere engaged in a wide range of criminal activity, including, but not limited to, racketeering, murder, attempted murder, robbery, extortion, money laundering, drug trafficking, assault, obstruction of justice, witness intimidation, weapons offenses, and immigration-related violations. MS-13 members are expected to commit such acts to maintain membership and discipline within the organization. Participation in violence and other criminal activity increases the level of respect accorded to a member or associate, resulting in that person maintaining or increasing his position in the organization. MS-13 also enforces its authority and promotes discipline by committing or threatening to commit violence, or otherwise punishing, members and associates who do not comply with the organization's rules.

14.     MS-13 members and associates communicate about their criminal activities with other MS-13 members and associates elsewhere in the United States, in El Salvador, and internationally using cellular telephones, the Internet, and other modes of communication. MS-13 members and associates also used national and transnational money wire transfers to conduct and promote the activities of the criminal organization.

15.     MS-13, including its leadership, membership, and associates in the Southern District of Ohio, numerous other states, El Salvador, and elsewhere, constituted an "enterprise" as defined by 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact. The enterprise was engaged in, and its activities affected, interstate and foreign commerce. The enterprise

8

constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## Purposes of the Enterprise

16.     The purposes of the enterprise included, but were not limited to, the following:

17.     Promoting, preserving, and enhancing the reputation, prestige, and standing of the enterprise through the use of intimidation, threats of violence, and acts of violence, such as murder, attempted murder, extortion, assault, possession of weapons, witness tampering, and obstruction of justice;

18.     Keeping victims and rivals in fear of the enterprise and its members and associates;

19.     Enriching the members and associates of the enterprise through various forms of criminal activity, including drug trafficking, extortion, and money laundering;

20.     Protecting the enterprise and its members and associates from detection, apprehension, and prosecution by law enforcement authorities; and

21.     Encouraging discipline by using intimidation and violence to punish members and associates who failed to comply with the enterprise's rules.

## Means and Methods of the Enterprise

22.     Among the means and methods by which the defendants and their co-conspirators conspired to conduct and participate in the conduct of the affairs of the enterprise were the following:

23.     MS-13 members and associates committed, attempted to commit, and threatened to commit acts of violence, including murder, attempted murder, extortion, assault, and possession of weapons, to enhance the enterprise's standing and position and ensure the enterprise's ability to operate and engage in criminal activity;

9

24.     MS-13 members and associates conducted acts of violence and otherwise projected power to retaliate against rivals and others who subjected members and associates to threats or disrespect;

25.     MS-13 members and associates threatened and intimidated witnesses and victims to deter them from cooperating with law enforcement;

26.     MS-13 members and associates enforced MS-13's authority and reputation by disciplining and punishing members and associates who did not comply with the enterprise's rules;

27.     MS-13 members and associates used drug trafficking, extortion, and other illegal conduct as a means of making money for the enterprise;

28.     MS-13 members and associates used funds obtained through illicit activity to support the enterprise, both in El Salvador and in the United States;

29.     MS-13 members and associates armed themselves with firearms, bladed objects, and other weapons in order to increase their ability to commit acts of violence, respond to real or perceived threats, and intimidate rivals, victims, and other targets; and

30.     MS-13 members and associates marked themselves with tattoos, displayed gang hand signs, utilized social media sites, and used nicknames to signify their membership in, or affiliation with, the enterprise.

### The Racketeering Conspiracy

31.     From approximately 2006 through the date of this Second Superseding Indictment, the exact dates being unknown to the grand jury, in the Southern District of Ohio and elswehere, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo,**

CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JUAN FLORES-CASTRO, a/k/a Duende, JOSE DANIEL GONZALEZ-CAMPOS, a/k/a Flaco, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger, JOSE MENDEZ-PERAZA, a/k/a Shadow, ERASMO HUMBERTO LIMA-MARTINEZ, a/k/a Tun Tun, NEHEMIAS JOEL MARTINEZ-HERNANDEZ, a/k/a Mysterio, JOSE CARLOS MERCADO-CRESPIN, a/k/a Payaso, DENIS DONALDO FUENTES-AVILA, DANIEL ALEXANDER DIAZ-ROMERO, a/k/a Manchas, GERARDO DAVILA-COLINDRES, a/k/a Cuervo, a/k/a Enano, MARVIN OTERO-SERRANO, a/k/a Vaca, a/k/a Bandallero, JORGE ALBERTO LANDAVERDE, a/k/a Grenas, JOSE SALINAS-ENRIQUEZ, a/k/a Martillo, NELSON ALEXANDER FLORES, a/k/a Mula, and CAROLINA GARCIA-MIRANDA, a/k/a Mamayema, together with others known and unknown to the grand jury, being persons employed by and associated with the enterprise known as La Mara Salvatrucha (MS-13), which enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and unlawfully conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined in 18 U.S.C. §§ 1961(1) and 1961(5), consisting of:

    a. Multiple acts of murder in violation of O.R.C. §§ 2903.01, 2903.02, 2923.01, 2923.02, and 2923.03;

    b. Multiple acts of extortion in violation of O.R.C. §§ 2905.11, 2923.01, 2923.02, and 2923.03;

    c. Multiple acts indictable under 18 U.S.C. §§ 1512, 1513, 1951, and 1956; and

d. Multiple offenses involving narcotics trafficking in violation of 21 U.S.C. §§ 841 and 846.

32. It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the MS-13 enterprise.

<u>Overt Acts</u>

33. In furtherance of the conspiracy and in order to affect the object thereof, the defendants and their co-conspirators, known and unknown to the grand jury, committed and caused to be commited the following overt acts, among others, in the Southern District of Ohio and elsewhere:

34. In approximately December 2006, the exact date being unknown to the grand jury, in or around Perry County, Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA**, **a/k/a Momia, a/k/a Pelon, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece,** and others known and unknown to the grand jury, murdered Jose Mendez, a/k/a Trailer, a/k/a Troca, a suspected confidential informant, by shooting him with a firearm.

35. On or about January 6, 2007, in the area of Clybourne Road and Northland Square Drive West, Columbus, Ohio, Defendant **ISAIAS ALVARADO, a/k/a Cabo,** sold cocaine.

36. On or about January 27, 2007, in the area of Clybourne Road and Northland Square Drive West, Columbus, Ohio, Defendant **ISAIAS ALVARADO, a/k/a Cabo,** sold cocaine.

37. On or about April 14, 2007, in the area of Clybourne Road and Northland Square Drive West, Columbus, Ohio, Defendant **ISAIAS ALVARADO, a/k/a Cabo,** sold cocaine.

38. On or about October 21, 2007, in the area of College Avenue and Livingston Avenue, Columbus, Ohio, Defendant **MARVIN OTERO-SERRANO, a/k/a Vaca, a/k/a Bandallero,** and others known and unknown to the grand jury, possessed a loaded shotgun.

39. On or about January 19, 2008, in the area of Deewood Drive and Maple Canyon, Columbus, Ohio, Defendant **ISAIAS ALVARADO, a/k/a Cabo,** possessed a loaded .38 caliber revolver.

40. On or around November 15, 2008, in the area of 2110 Lockbourne Road, Columbus, Ohio, Defendant **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon,** assaulted Ramon Ramos and another MS-13 member murdered Ramon Ramos and injured Angel Devilbiss by shooting them with a firearm.

41. On or about November 16, 2008, in Columbus, Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, and MARVIN OTERO-SERRANO, a/k/a Vaca, a/k/a Bandallero,** disposed of evidence, specifically, the firearm used to murder Ramon Ramos and injure Angel Devilbiss.

42. In approximately 2010 or 2011, the exact dates being unknown to the grand jury, in Columbus, Ohio and elsewhere, Defendant **NELSON ALEXANDER FLORES, a/k/a Mula,** and others known and unknown to the grand jury, extorted Victim No. 1.

43. In approximately 2010, 2011, or 2012, the exact dates being unknown to the grand jury, in Columbus, Ohio and elsewhere, MS-13 members and associates extorted Victim No. 2.

44. In approximately 2011, 2012, or 2013, the exact dates being unknown to the grand jury, in Columbus, Ohio and elsewhere, Defendant **NELSON ALEXANDER FLORES, a/k/a Mula,** and others known and unknown to the grand jury, extorted Victim No. 3.

45. On or about August 28, 2011, in the area of 6218 Deewood Court, Columbus, Ohio, MS-13 members and associates burned a 2003 Honda Accord LX belonging to Victim No. 4 after the victim refused to comply with the conspirators' extortion demand.

46. In approximately August and September 2011, the exact dates being unknown to the grand jury, in Columbus, Ohio and elsewhere, MS-13 members and associates extorted Victim No. 4.

47. On or about December 18, 2011, in Columbus, Ohio and elsewhere, Defendant **NELSON ALEXANDER FLORES, a/k/a Mula,** and others known and unknown to the grand jury, extorted Victim No. 5.

48. From approximately February 2013 through approximately August 2013, the exact dates being unknown to the grand jury, in Columbus, Ohio and elsewhere, MS-13 members and associates extorted Victim No. 6.

49. From approximately late 2014 through approximately mid-2017, the exact dates being unknown to the grand jury, in Columbus, Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JOSE SALINAS-ENRIQUEZ, a/k/a Martillo,** and others known and unknown to the grand jury, extorted Victim No. 7.

50. In approximately 2015, the exact date being unknown to the grand jury, in the area of 3000 Innis Road, Columbus, Ohio, Defendants **JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, JUAN JOSE**

ALVARENGA-ALBERTO, a/k/a Sailen, **JOSE CARLOS MERCADO-CRESPIN**, a/k/a **Payaso, and MARVIN OTERO-SERRANO**, a/k/a **Vaca**, a/k/a **Bandallero**, assaulted four members/associates of the enterprise for violating MS-13 rules.

51.     On or about January 23, 2015, in the area of Maple Canyon Avenue and East Dublin-Granville, Road, Columbus, Ohio, Defendant **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey**, possessed cocaine.

52.     From approximately March 2015 through approximately December 2016, the exact dates being unknown to the grand jury, in Columbus, Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, JOSE DANIEL GONZALEZ-CAMPOS, a/k/a Flaco, DENIS DONALDO FUENTES-AVILA, DANIEL ALEXANDER DIAZ-ROMERO, a/k/a Manchas,** and others known and unknown to the grand jury, extorted Victim No. 8.

53.     In approximately 2015, the exact date being unknown to the grand jury, in Columbus, Ohio, Defendants **JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, JUAN FLORES-CASTRO, a/k/a Duende,  and  JOSE  SALVADOR  GONZALEZ-CAMPOS, a/k/a  Danger,**  assaulted Victim No. 8.

54.     On or about June 6, 2015, in the area of Old Dublin Granville Road, east of SR3, in Westerville, Ohio, Defendants **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, and JOSE MANUEL ROMERO-PARADA, a/k/a Russo,** possessed cocaine and marijuana.

55.     On or about June 11, 2015, in the area of 5705 Millbank Road, Apt. E, Columbus, Ohio, Defendants **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, JOSE MANUEL**

ROMERO-PARADA, a/k/a Russo, JOSE CARLOS MERCADO-CRESPIN, a/k/a Payaso, and others known and unknown to the grand jury, assaulted Victim No. 9.

56. On or about June 21, 2015, the exact date being unknown to the grand jury, in the area of Alum Creek State Park in Columbus, Ohio, Defendants PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, DANIEL ALEXANDER DIAZ-ROMERO, a/k/a Manchas, and others known and unknown to the grand jury, threatened Victim No. 10 with a firearm.

57. In approximately June 2015 or July 2015, the exact date being unknown to the grand jury, in the area of 3000 Innis Road, Columbus, Ohio, Defendants MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, NEHEMIAS JOEL MARTINEZ-HERNANDEZ, a/k/a Mysterio, JOSE CARLOS MERCADO-CRESPIN, a/k/a Payaso, and others known and unknown to the grand jury, murdered Carlos Serrano-Ramos, a/k/a Migra, a suspected rival gang member, by stabbing him with a knife.

58. In approximately June 2015 or July 2015, the exact date being unknown, in the area of 2655 Saville Row, Columbus, Ohio, Defendant ISAIAS ALVARADO, a/k/a Cabo, disposed of evidence, specifically, a cellular telephone and a wallet, after the murder of Carlos Serrano-Ramos, a/k/a Migra.

59. In approximately June 2015 or July 2015, the exact date being unknown, in the area of 3000 Innis Road, Columbus, Ohio, Defendant JUAN JOSE JIMENEZ-MONTUFAR, a/k/a

16

**Chele Trece,** destroyed evidence, specifically, clothing worn by co-conspirators during the murder of Carlos Serrano-Ramos, a/k/a Migra.

60. On or about August 4, 2015, in the area of 1716 Shanley Drive, Unit 5, Columbus, Ohio, Defendant **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey,** sold cocaine.

61. On or about August 13, 2015, in the area of 1716 Shanley Drive, Unit 5, Columbus, Ohio, Defendant **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey,** sold cocaine.

62. On or about August 24, 2015, in the area of 1716 Shanley Drive, Unit 5, Columbus, Ohio, Defendant **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey,** and another individual sold cocaine.

63. On or about August 25, 2015, in the area of 1716 Shanley Drive, Unit 5, Columbus, Ohio, Defendant **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey,** possessed cocaine and marijuana.

64. In approximately November 2015, the exact date being unknown to the grand jury, in the area of 3000 Innis Road, Columbus, Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JUAN FLORES-CASTRO, a/k/a Duende, JOSE DANIEL GONZALEZ-CAMPOS, a/k/a Flaco, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger, ERASMO HUMBERTO LIMA-MARTINEZ, a/k/a Tun Tun,** and others known and unknown to the grand jury, murdered Wilson Villeda by slashing him with machetes and/or other bladed objects.

65.     On or about December 13, 2015, in Richmond, Virginia, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece,** and others known and unknown to the grand jury, including numerous members of other MS-13 cliques, participated in a meeting of the leadership of the East Coast Program of MS-13.

66.     From approximately early 2016 through mid-2017, in Columbus, Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JOSE MANUEL ROMERO-PARADA, a/k/a Russo,** and others known and unknown to the grand jury, extorted Victim No. 11.

67.     On or about February 20, 2016, in the area of 939 East Dublin-Granville Road, Columbus, Ohio, Defendants **JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey,** and others known and unknown to the grand jury, assaulted Victim No. 12.

68.     On or about March 4, 2016, in the area of 973 Berwin Street, Akron, Ohio, Defendants **JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, CAROLINA GARCIA-MIRANDA, a/k/a Mamayema,** and others known and unknown to the grand jury, possessed marijuana.

69.     On or about March 11, 2016, in the area of Westerville Road and Innis Road, Columbus, Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito,** and another MS-13 member, possessed a loaded Hi-Point .380 caliber pistol, a loaded FMK 9mm pistol, and two additional magazines containing ammunition.

70. On or about April 30, 2016, in the area of 6881 Springhouse Lane, Columbus, Ohio, Defendant **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey,** threatened Victim No. 13 with a firearm.

71. On or about September 1, 2016, in the area of 3529 Chiller Lane, Columbus, Ohio, Defendant **ERASMO HUMBERTO LIMA-MARTINEZ, a/k/a Tun Tun,** and others known and unknown to the grand jury, sold heroin.

72. On or about November 6, 2016, in the area of 5832 North Meadows Boulevard, Apt. B, Columbus, Ohio, Defendant **JOSE SALINAS-ENRIQUEZ, a/k/a Martillo,** possessed two live rounds of 9mm ammunition and cocaine.

73. On or about December 4, 2016, in the area of 4407 Melroy Avenue, Columbus, Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JUAN FLORES-CASTRO, a/k/a Duende, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger, JOSE MENDEZ-PERAZA, a/k/a Shadow, and JORGE ALBERTO LANDAVERDE, a/k/a Grenas,** murdered Salvador Martinez-Diaz, a/k/a Rabanito, a suspected rival gang member, by shooting him with firearms.

74. In 2016 and 2017, the exact dates being unknown to the grand jury, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito,** and others known and unknown to

the grand jury, conspired to murder Victim No. 14 to prevent him/her from providing information to law enforcement.

75.     In approximately 2017, the exact dates being unknown to the grand jury, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, JUAN FLORES-CASTRO, a/k/a Duende,** and others known and unknown to the grand jury, conspired to murder, or otherwise harm, Victim No. 15.

76.     On or about January 22, 2017, in the area of 2900 Westerville Road, Columbus, Ohio, Defendant **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey,** possessed cocaine, marijuana, and a loaded Hi-Point 9mm pistol.

77.     Between approximately January 23, 2017 and January 25, 2017, the exact dates being unknown to the grand jury, in Columbus, Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey,** and others known and unknown to the grand jury, conspired to possess and distribute controlled substances.

78.     On or about July 28, 2017, in the area of 4875 Sinclair Road, Columbus, Ohio, Defendant **NEHEMIAS JOEL MARTINEZ-HERNANDEZ, a/k/a Mysterio,** assaulted and attempted to murder Victim No. 16 by shooting at him/her with a firearm.

79.     On or about July 29, 2017, in the area of 4612 Channing Terrace, Apt. C, Columbus, Ohio, Defendant **NEHEMIAS JOEL MARTINEZ-HERNANDEZ, a/k/a Mysterio,** possessed a Glock 27 .40 caliber pistol.

80.     On or about August 15, 2017, in the area of 3227 Barnett Court South, Columbus, Ohio, Defendant **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon,**

possessed a Hi-Point 9mm rifle, eight rounds of 9mm ammunition, two rounds of .380 caliber ammunition, four rounds of .38 caliber ammunition, cocaine, and marijuana.

81.     On or about August 15, 2017, in the area of 2810 West Ray Street, Indianapolis, Indiana, Defendant **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon,** threatened the lives of a Transnational Anti-Gang Unit officer and that officer's family in El Salvador.

82.     On or about August 15, 2017, in the area of 2810 West Ray Street, Indianapolis, Indiana, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger,** and others known and unknown to the grand jury, possessed cocaine and marijuana.

83.     On or about August 15, 2017, in the area of 3227 Barnett Court South, Columbus, Ohio, Defendant **JORGE ALBERTO LANDAVERDE, a/k/a Grenas,** possessed a Taurus .22 caliber revolver and five boxes of .22 caliber ammunition.

84.     On or about August 15, 2017, in the area of 3350 Anita Street, Columbus, Ohio, Defendant **JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece,** possessed a Kel-Tec 9mm pistol, a Browning Arms 6.35mm pistol, a Winchester 12 gauge shotgun, three rounds of .22 caliber ammunition, and two rounds of .38 caliber ammunition.

85.     On or about August 15, 2017, in the area of 2810 West Ray Street, Indianapolis, Indiana, Defendant **JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger,** possessed a Taurus .357 caliber revolver and five rounds of .357 caliber ammunition.

86.     On or about August 15, 2017, in the area of 2655 Saville Row, Columbus, Ohio, Defendant **ISAIAS ALVARADO, a/k/a Cabo,** possessed a High Standard .22 caliber revolver.

87.     On or about August 15, 2017, in the area of 3342 Anita Street, Columbus, Ohio, Defendants **JUAN FLORES-CASTRO, a/k/a Duende, and DENIS DONALDO FUENTES-AVILA** conspired to possess, and did possess, marijuana.

88.     On or about August 26, 2017, in the area of the Delaware County Jail, 844 U.S. Highway 42, Delaware, Ohio, Defendant **ISAIAS ALVARADO, a/k/a Cabo,** directed another person to dispose of evidence, specifically, a firearm.

89.     On or about November 30, 2017, in the area of 85 Marconi Boulevard, Columbus, Ohio, Defendant **JOSE MENDEZ-PERAZA, a/k/a Shadow,** threatened to kill the family of Victim No. 17 if he/she cooperated with law enforcement.

90.     From approximately July 19, 2017 through approximately July 21, 2017, in the area of 370 South Front Street, Columbus, Ohio, Defendant **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey,** directed another person to mislead a United States Probation Officer about his background, criminal activity, and connection to MS-13.

91.     Throughout the course of the charged racketeering conspiracy, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JUAN FLORES-CASTRO, a/k/a Duende, ERASMO HUMBERTO LIMA-MARTINEZ, a/k/a Tun Tun, NEHEMIAS JOEL MARTINEZ-HERNANDEZ, a/k/a Mysterio, JOSE CARLOS MERCADO-CRESPIN, a/k/a Payaso, DENIS DONALDO FUENTES-AVILA, DANIEL ALEXANDER DIAZ-ROMERO, a/k/a Manchas, GERARDO DAVILA-COLINDRES, a/k/a Cuervo, a/k/a Enano, MARVIN**

OTERO-SERRANO, a/k/a Vaca, a/k/a Bandallero, **JORGE ALBERTO LANDAVERDE**, **a/k/a Grenas, JOSE SALINAS-ENRIQUEZ, a/k/a Martillo**, and others known and unknown to the grand jury, conspired to possess and distribute, and did possess and distribute, controlled substances, including cocaine, marijuana, and heroin.

92. Throughout the course of the charged racketeering conspiracy, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger, DANIEL ALEXANDER DIAZ-ROMERO, a/k/a Manchas, GERARDO DAVILA-COLINDRES, a/k/a Cuervo, a/k/a Enano, NELSON ALEXANDER FLORES, a/k/a Mula, CAROLINA GARCIA-MIRANDA, a/k/a Mamayema**, and others known and unknown to the grand jury, conspired to commit, and did commit, money laundering, in that they engaged in financial transactions affecting interstate and foreign commerce, including the use of national and international wire transfers to and from co-conspirators and intermediaries (*i.e.*, people who had some direct or indirect connection to MS-13), to facilitate the movement of extortion proceeds and drug trafficking proceeds between the Southern District of Ohio, other jurisdictions within the United States, El Salvador, Honduras, and elsewhere, in order to conceal the nature and source of the funds and promote the activities of the enterprise.

All in violation of 18 U.S.C. § 1962(d).

## NOTICE OF SPECIAL SENTENCING ALLEGATIONS AS TO COUNT ONE

93.     The allegations contained in Paragraphs 1–92 of Count One of this Second Superseding Indictment are re-alleged and fully incorporated by reference herein.

94.     In approximately December 2006, the exact date being unknown to the grand jury, in the Southern District of Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece,** and others known and unknown to the grand jury, committed an act involving murder, in violation of Sections 2903.02 and 2923.03 of the Ohio Revised Code, in that they committed and caused to be committed, and aided and abetted in the commission of, a murder, that is, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, and JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece,** did purposely cause the death of Jose Mendez, a/k/a Trailer, a/k/a Troca.

95.     In approximately June 2015 or July 2015, the exact date being unknown to the grand jury, in the Southern District of Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, NEHEMIAS JOEL MARTINEZ-HERNANDEZ, a/k/a Mysterio, JOSE CARLOS MERCADO-CRESPIN, a/k/a Payaso,** and others known and unknown to the grand jury, committed an act involving murder, in violation of Sections 2903.02 and 2923.03 of the Ohio Revised Code, in that they committed and caused to be committed, and aided and abetted in the commission of, a murder, that is, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-**

MONTUFAR, a/k/a Chele Trece, **PEDRO ALFONSO OSORIO-FLORES**, a/k/a Smokey, **ISAIAS ALVARADO**, a/k/a Cabo, **JOSE MANUEL ROMERO-PARADA**, a/k/a Russo, **NEHEMIAS JOEL MARTINEZ-HERNANDEZ**, a/k/a Mysterio, and **JOSE CARLOS MERCADO-CRESPIN, a/k/a Payaso,** did purposely cause the death of Carlos Serrano-Ramos, a/k/a Migra.

96.     In approximately November 2015, the exact date being unknown to the grand jury, in the Southern District of Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JUAN FLORES-CASTRO, a/k/a Duende, JOSE DANIEL GONZALEZ-CAMPOS, a/k/a Flaco, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger, ERASMO HUMBERTO LIMA-MARTINEZ, a/k/a Tun Tun,** and others known and unknown to the grand jury, committed an act involving murder, in violation of Sections 2903.02 and 2923.03 of the Ohio Revised Code, in that they committed and caused to be committed, and aided and abetted in the commission of, a murder, that is, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JUAN FLORES-CASTRO, a/k/a Duende, JOSE DANIEL GONZALEZ-CAMPOS, a/k/a Flaco, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a**

Danger, and **ERASMO HUMBERTO LIMA-MARTINEZ, a/k/a Tun Tun**, did purposely cause the death of Wilson Villeda.

97.     Or or about December 4, 2016, in the Southern District of Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JUAN FLORES-CASTRO, a/k/a Duende, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger, JOSE MENDEZ-PERAZA, a/k/a Shadow, JORGE ALBERTO LANDAVERDE, a/k/a Grenas,** and others known and unknown to the grand jury, committed an act involving murder, in violation of Sections 2903.02 and 2923.03 of the Ohio Revised Code, in that they committed and caused to be committed, and aided and abetted in the commission of, a murder, that is, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JUAN FLORES-CASTRO, a/k/a Duende, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger, JOSE MENDEZ-PERAZA, a/k/a Shadow, and JORGE ALBERTO LANDAVERDE, a/k/a Grenas,** did purposely cause the death of Salvador Martinez-Diaz, a/k/a Rabanito.

## COUNT TWO
### (Murder in Aid of Racketeering)

98.     The allegations contained in Paragraphs 1–30 of Count One of this Second Superseding Indictment are re-alleged and fully incorporated by reference herein.

99. MS-13, including its leadership, membership, and associates, constituted an enterprise, as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

100. The enterprise described above, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of O.R.C. §§ 2903.01, 2903.02, 2923.01, 2923.02, and 2923.03; acts involving extortion, in violation of O.R.C. §§ 2905.11, 2923.01, 2923.02, and 2923.03; acts indictable under 18 U.S.C. §§ 1512, 1513, 1951, and 1956; and offenses involving narcotics trafficking, in violation of 21 U.S.C. §§ 841 and 846.

101. In approximately June 2015 or July 2015, the exact date being unknown to the grand jury, in Columbus, Ohio, in the Southern District of Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, NEHEMIAS JOEL MARTINEZ-HERNANDEZ, a/k/a Mysterio, JOSE CARLOS MERCADO-CRESPIN, a/k/a Payaso,** and others known and unknown to the grand jury, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, knowingly and unlawfully murdered and aided and abetted the murder of Carlos Serrano-Ramos, a/k/a Migra, in violation of O.R.C. §§ 2903.02 and 2923.03, that is, purposely caused the death of Carlos Serrano-Ramos, a/k/a Migra.

All in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2.

27

## COUNT THREE
### (Murder in Aid of Racketeering)

102. The allegations contained in Paragraphs 98–100 of Count Two of this Second Superseding Indictment are re-alleged and fully incorporated by reference herein.

103. In approximately November 2015, the exact date being unknown to the grand jury, in Columbus, Ohio, in the Southern District of Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JUAN FLORES-CASTRO, a/k/a Duende, JOSE DANIEL GONZALEZ-CAMPOS, a/k/a Flaco, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger, ERASMO HUMBERTO LIMA-MARTINEZ, a/k/a Tun Tun,** and others known and unknown to the grand jury, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, knowingly and unlawfully murdered and aided and abetted the murder of Wilson Villeda, in violation of O.R.C. §§ 2903.02 and 2923.03, that is, purposely caused the death of Wilson Villeda.

All in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2.

## COUNT FOUR
### (Murder in Aid of Racketeering)

104. The allegations contained in Paragraphs 98–100 of Count Two of this Second Superseding Indictment are re-alleged and fully incorporated by reference herein.

105. On or about December 4, 2016, in Columbus, Ohio, in the Southern District of Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon,**

**JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JUAN FLORES-CASTRO, a/k/a Duende, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger, JOSE MENDEZ-PERAZA, a/k/a Shadow, and JORGE ALBERTO LANDAVERDE, a/k/a Grenas,** for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, knowingly and unlawfully murdered and aided and abetted the murder of Salvador Martinez-Diaz, a/k/a Rabanito, in violation of O.R.C. §§ 2903.02 and 2923.03, that is, purposely caused the death of Salvador Martinez-Diaz, a/k/a Rabanito.

All in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2.

### COUNT FIVE
**(Murder Through the Use of a Firearm During and in Relation to a Crime of Violence)**

106. On or about December 4, 2016, in Columbus, Ohio, in the Southern District of Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JUAN FLORES-CASTRO, a/k/a Duende, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger, JOSE MENDEZ-PERAZA, a/k/a Shadow, and JORGE ALBERTO LANDAVERDE, a/k/a Grenas,** did knowingly use, carry, and discharge a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1),

29

as alleged in Count Four of this Second Superseding Indictment, and in the course of this violation, caused the death of Salvador Martinez-Diaz, a/k/a Rabanito, which killing was murder, as defined in 18 U.S.C. § 1111, that is, the unlawful killing of Salvador Martinez-Diaz, a/k/a Rabanito, with malice aforethought.

All in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(j)(1) and 18 U.S.C. § 2.

## COUNT SIX
**(Using or Carrying a Firearm During and in Relation to a Crime of Violence)**

107.    From approximately late 2014 through approximately mid-2017, the exact date being unknown, in the Southern District of Ohio, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo,** and **CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito,** did knowingly use, carry, and brandish a firearm, that is, a handgun, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, interference with commerce by extortion, in violation of 18 U.S.C. §§ 1951(a) and 1951(b)(2), as alleged in Paragraph 49 of Count One of this Second Superseding Indictment.

All in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2.

## COUNT SEVEN
**(Using or Carrying a Firearm During and in Relation to a Crime of Violence)**

108.    From approximately March 2015 through approximately December 2016, the exact dates being unknown to the grand jury, in Columbus, Ohio, **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey,** did knowingly use and carry, a firearm, that is, a handgun, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States,

30

that is, interference with commerce by extortion, in violation of 18 U.S.C. §§ 1951(a) and 1951(b)(2), as alleged in Paragraph 52 of Count One of this Second Superseding Indictment.

All in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § 2.

## COUNT EIGHT
### (Alien in Possession of Ammunition)

109.    On or about August 15, 2017, in the Southern District of Ohio, Defendant **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon,** then being an alien illegally or unlawfully in the United States, did knowingly possess, in or affecting interstate commerce, the following ammunition:

- One round of .380 caliber "Tulammo 380 ACP" ammunition;

- One round of .380 caliber "R-P 380 Auto" ammunition;

- Eight rounds of 9mm "WIN 9mm Luger" ammunition; and

- Four rounds of .38 caliber "Federal 38 Special" ammunition.

All in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2) and 18 U.S.C. § 2.

## COUNT NINE
### (Alien in Possession of Firearms)

110.    On or about August 15, 2017, in the Southern District of Ohio, Defendant **JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece,** then being an alien illegally or unlawfully in the United States, did knowingly possess, in or affecting interstate commerce, the following firearms:

- One Browning Arms, Model 25, 6.35mm pistol, serial number 121498;

- One Kel-Tec, Model PF-9, 9mm pistol, serial number RVB81; and

- One Winchester, 12-guage shotgun, serial number 166220.

All in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2) and 18 U.S.C. § 2.

## COUNT TEN
### (Alien in Possession of Firearm and Ammunition)

111.    On or about August 15, 2017, in the Southern District of Ohio, Defendant **JORGE ALBERTO LANDAVERDE, a/k/a Grenas,** then being an alien illegally or unlawfully in the United States, did knowingly possess, in or affecting interstate commerce, the following firearms and ammunition:

- One Taurus, Model 941, .22 caliber revolver, serial number FT30564; and

- Five boxes of .22 caliber ammunition.

All in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2) and 18 U.S.C. § 2.

## COUNT ELEVEN
### (Possession with Intent to Distribute Controlled Substances)

112.    On or about August 15, 2017, in the Southern District of Ohio, Defendant **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon,** did knowingly and unlawfully possess with intent to distribute a substance containing a detectible amount of cocaine, a Schedule II controlled substance, and a substance containing a detectible amount of marijuana, a Schedule I controlled substance.

All in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT TWELVE
### (Obstruction of Justice)

113.    On or about August 26, 2017, in the Southern District of Ohio, Defendant **ISAIAS ALVARADO, a/k/a Cabo,** did corruptly attempt to obstruct, influence, and impede *United States v. Aguilar-Rivera, et al.* (Case No. 2:17-CR-164), an official proceeding, by directing another individual to dispose of evidence, specifically, a firearm.

32

All in violation of 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 2.

## COUNT THIRTEEN
### (Destruction or Removal of Property to Prevent Seizure)

114.    On or about August 26, 2017, in the Southern District of Ohio, Defendant **ISAIAS**

**ALVARADO, a/k/a Cabo,** after the search and seizure of property by law enforcement officers

from the Columbus Division of Police and the Federal Bureau of Investigation, persons authorized

to make such search and seizure, did knowingly attempt to dispose of or transfer a firearm, for the

purpose of preventing and impairing the Government's lawful authority to take said property into

its custody and control.

All in violation of 18 U.S.C. § 2232(a) and 18 U.S.C. § 2.

## COUNT FOURTEEN
### (Illegal Re-Entry of a Removed Alien)

115.    On or about August 15, 2017, in the Southern District of Ohio, Defendant

**MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon,** an alien, knowingly and

unlawfully entered and was found in the United States after having been removed, excluded, or

deported therefrom on or about January 14, 2009, without having obtained the express consent of

the Attorney General of the United States or the Secretary of the Department of Homeland Security

to re-apply for admission to the United States prior to his return.

All in violation of 8 U.S.C. § 1326(a).

## COUNT FIFTEEN
### (Illegal Re-Entry of a Removed Alien)

116.    On or about October 28, 2016, in the Southern District of Ohio, Defendant **CRUZ**

**ALBERTO-ARBARNGAS, a/k/a Cruzito,** an alien, knowingly and unlawfully entered and was

found in the United States after having been removed, excluded, or deported therefrom on or about

33

July 24, 2012, without having obtained the express consent of the Attorney General of the United States or the Secretary of the Department of Homeland Security to re-apply for admission to the United States prior to his return.

All in violation of 8 U.S.C. § 1326(a).

## NOTICE OF SPECIAL FINDINGS

117. The allegations contained in Counts Two, Three, Four, and Five of this Second Superseding Indictment are re-alleged and fully incorporated by reference herein.

118. As to Count Two, Defendant **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon:**

    a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Carlos Serrano-Ramos, a/k/a Migra, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C)); and

    c. committed the offense after substantial planning and premeditation to cause the death of Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3592(c)(9)).

119. As to Count Two, Defendant **JOSE BONILLA-MEJIA, a/k/a Espia:**

    a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b. intentionally killed Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3591(a)(2)(A));

34

   c. intentionally inflicted serious bodily injury that resulted in the death of Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3591(a)(2)(B));

   d. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Carlos Serrano-Ramos, a/k/a Migra, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

   e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Carlos Serrano-Ramos, a/k/a Migra, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

   f. committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3592(c)(6)); and

   g. committed the offense after substantial planning and premeditation to cause the death of Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3592(c)(9)).

120.   As to Count Two, Defendant **JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece:**

   a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

   b. intentionally killed Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3591(a)(2)(A));

35

   c. intentionally inflicted serious bodily injury that resulted in the death of Carlos
      Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3591(a)(2)(B));

   d. intentionally participated in an act, contemplating that the life of a person would be
      taken or intending that lethal force would be used in connection with a person, other
      than one of the participants in the offense, and that Carlos Serrano-Ramos, a/k/a
      Migra, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

   e. intentionally and specifically engaged in an act of violence, knowing that the act
      created a grave risk of death to a person, other than one of the participants in the
      offense, such that participation in the act constituted a reckless disregard for human
      life and Carlos Serrano-Ramos, a/k/a Migra, died as a direct result of the act (18
      U.S.C. § 3591(a)(2)(D));

   f. committed the offense in an especially heinous, cruel, or depraved manner in that
      it involved torture or serious physical abuse to Carlos Serrano-Ramos, a/k/a Migra
      (18 U.S.C. § 3592(c)(6)); and

   g. committed the offense after substantial planning and premeditation to cause the
      death of Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3592(c)(9)).

121.   As to Count Two, Defendant **PEDRO ALFONSO OSORIO-FLORES, a/k/a
Smokey:**

   a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C.
      § 3591(a));

   b. intentionally killed Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C.
      § 3591(a)(2)(A));

36

c. intentionally inflicted serious bodily injury that resulted in the death of Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3591(a)(2)(B));

d. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Carlos Serrano-Ramos, a/k/a Migra, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Carlos Serrano-Ramos, a/k/a Migra, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

f. committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3592(c)(6));

g. committed the offense after substantial planning and premeditation to cause the death of Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3592(c)(9)); and

h. had previously been convicted of violating Title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of five or more years may be imposed (18 U.S.C. § 3592(c)(12)).

122. As to Count Two, Defendant **ISAIAS ALVARADO, a/k/a Cabo:**

a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

b. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Carlos Serrano-Ramos, a/k/a Migra, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

c. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Carlos Serrano-Ramos, a/k/a Migra died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D)); and

d. committed the offense after substantial planning and premeditation to cause the death of Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3592(c)(9)).

123. As to Count Two, Defendant **JOSE MANUEL ROMERO-PARADA, a/k/a Russo:**

a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

b. intentionally killed Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3591(a)(2)(A));

c. intentionally inflicted serious bodily injury that resulted in the death of Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3591(a)(2)(B));

d. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Carlos Serrano-Ramos, a/k/a Migra, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

38

  e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Carlos Serrano-Ramos, a/k/a Migra, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

  f. committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3592(c)(6)); and

  g. committed the offense after substantial planning and premeditation to cause the death of Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3592(c)(9)).

124. As to Count Two, Defendant **NEHEMIAS JOEL MARTINEZ-HERNANDEZ, a/k/a Mysterio:**

  a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

  b. intentionally killed Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3591(a)(2)(A));

  c. intentionally inflicted serious bodily injury that resulted in the death of Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3591(a)(2)(B));

  d. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Carlos Serrano-Ramos, a/k/a Migra, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    e.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Carlos Serrano-Ramos, a/k/a Migra, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

    f.  committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3592(c)(6)); and

    g.  committed the offense after substantial planning and premeditation to cause the death of Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3592(c)(9)).

125.   As to Count Two, Defendant **JOSE CARLOS MERCADO-CRESPIN, a/k/a Payaso:**

    a.  was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Carlos Serrano-Ramos, a/k/a Migra, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D)); and

    c.  committed the offense after substantial planning and premeditation to cause the death of Carlos Serrano-Ramos, a/k/a Migra (18 U.S.C. § 3592(c)(9)).

126. As to Count Three, Defendant **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon:**

    a.  was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b.  intentionally killed Wilson Villeda (18 U.S.C. § 3591(a)(2)(A));

    c.  intentionally inflicted serious bodily injury that resulted in the death of Wilson Villeda (18 U.S.C. § 3591(a)(2)(B));

    d.  intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    e.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

    f.  committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Wilson Villeda (18 U.S.C. § 3592(c)(6));

    g.  committed the offense after substantial planning and premeditation to cause the death of Wilson Villeda (18 U.S.C. § 3592(c)(9)); and

    h.  committed the offense against a victim, Wilson Villeda, who was particularly vulnerable due to old age, youth, or infirmity (18 U.S.C. § 3592(c)(11)).

127.   As to Count Three, Defendant **JOSE BONILLA-MEJIA, a/k/a Espia:**

   a.  was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

   b.  intentionally killed Wilson Villeda (18 U.S.C. § 3591(a)(2)(A));

   c.  intentionally inflicted serious bodily injury that resulted in the death of Wilson Villeda (18 U.S.C. § 3591(a)(2)(B));

   d.  intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

   e.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

   f.  committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Wilson Villeda (18 U.S.C. § 3592(c)(6));

   g.  committed the offense after substantial planning and premeditation to cause the death of Wilson Villeda (18 U.S.C. § 3592(c)(9)); and

   h.  committed the offense against a victim, Wilson Villeda, who was particularly vulnerable due to old age, youth, or infirmity (18 U.S.C. § 3592(c)(11)).

128.    As to Count Three, Defendant **JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece:**

a.  was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

b.  intentionally killed Wilson Villeda (18 U.S.C. § 3591(a)(2)(A));

c.  intentionally inflicted serious bodily injury that resulted in the death of Wilson Villeda (18 U.S.C. § 3591(a)(2)(B));

d.  intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

e.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

f.  committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Wilson Villeda (18 U.S.C. § 3592(c)(6));

g.  committed the offense after substantial planning and premeditation to cause the death of Wilson Villeda (18 U.S.C. § 3592(c)(9)); and

h.  committed the offense against a victim, Wilson Villeda, who was particularly vulnerable due to old age, youth, or infirmity (18 U.S.C. § 3592(c)(11)).

43

129.    As to Count Three, Defendant **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey:**

    a.   was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b.   intentionally killed Wilson Villeda (18 U.S.C. § 3591(a)(2)(A));

    c.   intentionally inflicted serious bodily injury that resulted in the death of Wilson Villeda (18 U.S.C. § 3591(a)(2)(B));

    d.   intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    e.   intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

    f.   committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Wilson Villeda (18 U.S.C. § 3592(c)(6));

    g.   committed the offense after substantial planning and premeditation to cause the death of Wilson Villeda (18 U.S.C. § 3592(c)(9));

    h.   committed the offense against a victim, Wilson Villeda, who was particularly vulnerable due to old age, youth, or infirmity (18 U.S.C. § 3592(c)(11)); and

    i.   had previously been convicted of violating Title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of five or more years may be imposed (18 U.S.C. § 3592(c)(12)).

130.    As to Count Three, Defendant **ISAIAS ALVARADO, a/k/a Cabo:**

    a.   was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b.   intentionally killed Wilson Villeda (18 U.S.C. § 3591(a)(2)(A));

    c.   intentionally inflicted serious bodily injury that resulted in the death of Wilson Villeda (18 U.S.C. § 3591(a)(2)(B));

    d.   intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    e.   intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

    f.   committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Wilson Villeda (18 U.S.C. § 3592(c)(6));

    g.   committed the offense after substantial planning and premeditation to cause the death of Wilson Villeda (18 U.S.C. § 3592(c)(9)); and

    h.  committed the offense against a victim, Wilson Villeda, who was particularly vulnerable due to old age, youth, or infirmity (18 U.S.C. § 3592(c)(11)).

131.    As to Count Three, Defendant **CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito:**

    a.  was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b.  intentionally killed Wilson Villeda (18 U.S.C. § 3591(a)(2)(A));

    c.  intentionally inflicted serious bodily injury that resulted in the death of Wilson Villeda (18 U.S.C. § 3591(a)(2)(B));

    d.  intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    e.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

    f.  committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Wilson Villeda (18 U.S.C. § 3592(c)(6));

    g.  committed the offense after substantial planning and premeditation to cause the death of Wilson Villeda (18 U.S.C. § 3592(c)(9)); and

h. committed the offense against a victim, Wilson Villeda, who was particularly vulnerable due to old age, youth, or infirmity (18 U.S.C. § 3592(c)(11)).

132. As to Count Three, Defendant **JOSE MANUEL ROMERO-PARADA, a/k/a Russo**:

a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

b. intentionally killed Wilson Villeda (18 U.S.C. § 3591(a)(2)(A));

c. intentionally inflicted serious bodily injury that resulted in the death of Wilson Villeda (18 U.S.C. § 3591(a)(2)(B));

d. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

f. committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Wilson Villeda (18 U.S.C. § 3592(c)(6));

g. committed the offense after substantial planning and premeditation to cause the death of Wilson Villeda (18 U.S.C. § 3592(c)(9)); and

    h.  committed the offense against a victim, Wilson Villeda, who was particularly vulnerable due to old age, youth, or infirmity (18 U.S.C. § 3592(c)(11)).

133.  As to Count Three, Defendant **JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen:**

    a.  was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b.  intentionally killed Wilson Villeda (18 U.S.C. § 3591(a)(2)(A));

    c.  intentionally inflicted serious bodily injury that resulted in the death of Wilson Villeda (18 U.S.C. § 3591(a)(2)(B));

    d.  intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    e.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

    f.  committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Wilson Villeda (18 U.S.C. § 3592(c)(6));

    g.  committed the offense after substantial planning and premeditation to cause the death of Wilson Villeda (18 U.S.C. § 3592(c)(9)); and

    h.  committed the offense against a victim, Wilson Villeda, who was particularly vulnerable due to old age, youth, or infirmity (18 U.S.C. § 3592(c)(11)).

134.    As to Count Three, Defendant **JUAN FLORES-CASTRO, a/k/a Duende:**

    a.  was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b.  intentionally killed Wilson Villeda (18 U.S.C. § 3591(a)(2)(A));

    c.  intentionally inflicted serious bodily injury that resulted in the death of Wilson Villeda (18 U.S.C. § 3591(a)(2)(B));

    d.  intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    e.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

    f.  committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Wilson Villeda (18 U.S.C. § 3592(c)(6));

    g.  committed the offense after substantial planning and premeditation to cause the death of Wilson Villeda (18 U.S.C. § 3592(c)(9)); and

    h. committed the offense against a victim, Wilson Villeda, who was particularly vulnerable due to old age, youth, or infirmity (18 U.S.C. § 3592(c)(11)).

135.   As to Count Three, Defendant **JOSE DANIEL GONZALEZ-CAMPOS, a/k/a Flaco:**

    a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b. intentionally killed Wilson Villeda (18 U.S.C. § 3591(a)(2)(A));

    c. intentionally inflicted serious bodily injury that resulted in the death of Wilson Villeda (18 U.S.C. § 3591(a)(2)(B));

    d. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

    f. committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Wilson Villeda (18 U.S.C. § 3592(c)(6));

    g. committed the offense after substantial planning and premeditation to cause the death of Wilson Villeda (18 U.S.C. § 3592(c)(9)); and

h. committed the offense against a victim, Wilson Villeda, who was particularly vulnerable due to old age, youth, or infirmity (18 U.S.C. § 3592(c)(11)).

136. As to Count Three, Defendant **JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger:**

a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

b. intentionally killed Wilson Villeda (18 U.S.C. § 3591(a)(2)(A));

c. intentionally inflicted serious bodily injury that resulted in the death of Wilson Villeda (18 U.S.C. § 3591(a)(2)(B));

d. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

f. committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Wilson Villeda (18 U.S.C. § 3592(c)(6));

g. committed the offense after substantial planning and premeditation to cause the death of Wilson Villeda (18 U.S.C. § 3592(c)(9)); and

    h. committed the offense against a victim, Wilson Villeda, who was particularly vulnerable due to old age, youth, or infirmity (18 U.S.C. § 3592(c)(11)).

137. As to Count Three, Defendant **ERASMO HUMBERTO LIMA-MARTINEZ, a/k/a Tun Tun:**

    a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b. intentionally killed Wilson Villeda (18 U.S.C. § 3591(a)(2)(A));

    c. intentionally inflicted serious bodily injury that resulted in the death of Wilson Villeda (18 U.S.C. § 3591(a)(2)(B));

    d. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Wilson Villeda died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

    f. committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Wilson Villeda (18 U.S.C. § 3592(c)(6));

    g. committed the offense after substantial planning and premeditation to cause the death of Wilson Villeda (18 U.S.C. § 3592(c)(9)); and

h. committed the offense against a victim, Wilson Villeda, who was particularly vulnerable due to old age, youth, or infirmity (18 U.S.C. § 3592(c)(11)).

138. As to Counts Four and Five, Defendant **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon:**

    a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    c. in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(5)); and

    d. committed the offense after substantial planning and premeditation to cause the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(9)).

139. As to Counts Four and Five, Defendant **JOSE BONILLA-MEJIA, a/k/a Espia:**

    a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C)); and

      c. committed the offense after substantial planning and premeditation to cause the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(9)).

140. As to Counts Four and Five, Defendant **JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece:**

      a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

      b. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C)); and

      c. committed the offense after substantial planning and premeditation to cause the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(9)).

141. As to Counts Four and Five, Defendant **PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey:**

      a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

      b. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

      c. in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(5));

    d.  committed the offense after substantial planning and premeditation to cause the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(9)); and

    e.  had previously been convicted of violating Title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of five or more years may be imposed (18 U.S.C. § 3592(c)(12)).

142.    As to Counts Four and Five, Defendant **ISAIAS ALVARADO, a/k/a Cabo:**

    a.  was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

    b.  intentionally killed Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3591(a)(2)(A));

    c.  intentionally inflicted serious bodily injury that resulted in the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3591(a)(2)(B));

    d.  intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    e.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

     f.   in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(5)); and

     g.   committed the offense after substantial planning and premeditation to cause the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(9)).

143.    As to Counts Four and Five, Defendant **CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito:**

     a.   was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

     b.   intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C)); and

     c.   committed the offense after substantial planning and premeditation to cause the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(9)).

144.    As to Counts Four and Five, Defendant **JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen:**

     a.   was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

     b.   intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

     c. in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(5)); and

     d. committed the offense after substantial planning and premeditation to cause the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(9)).

145. As to Counts Four and Five, Defendant **JUAN FLORES-CASTRO, a/k/a Duende:**

     a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

     b. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

     c. in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(5)); and

     d. committed the offense after substantial planning and premeditation to cause the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(9)).

146. As to Counts Four and Five, Defendant **JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger:**

     a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

b. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

c. in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(5)); and

d. committed the offense after substantial planning and premeditation to cause the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(9)).

147. As to Counts Four and Five, Defendant **JOSE MENDEZ-PERAZA, a/k/a Shadow:**

a. was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

b. intentionally killed Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3591(a)(2)(A));

c. intentionally inflicted serious bodily injury that resulted in the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3591(a)(2)(B));

d. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the

58

offense, such that participation in the act constituted a reckless disregard for human life and Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

f.  in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(5)); and

g.  committed the offense after substantial planning and premeditation to cause the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(9)).

148.  As to Counts Four and Five, Defendant **JORGE ALBERTO-LANDAVERDE, a/k/a Grenas:**

a.  was more than eighteen (18) years of age at the time of the offense (18 U.S.C. § 3591(a));

b.  intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and that Salvador Martinez-Diaz, a/k/a Rabanito, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

c.  in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(5)); and

d.  committed the offense after substantial planning and premeditation to cause the death of Salvador Martinez-Diaz, a/k/a Rabanito (18 U.S.C. § 3592(c)(9)).

All pursuant to 18 U.S.C. §§ 3591 and 3592.

## FORFEITURE ALLEGATION A

149.     The allegations contained in Count One of this Second Superseding Indictment are re-alleged and fully incorporated by reference herein for the purpose of alleging forfeitures to the United States, pursuant to 18 U.S.C. § 1963 and 28 U.S.C. § 2461(c).

150.     Upon conviction of any offense alleged in Count One of this Second Superseding Indictment, Defendants **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon, JOSE BONILLA-MEJIA, a/k/a Espia, JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece, PEDRO ALFONSO OSORIO-FLORES, a/k/a Smokey, ISAIAS ALVARADO, a/k/a Cabo, CRUZ ALBERTO-ARBARNGAS, a/k/a Cruzito, JOSE MANUEL ROMERO-PARADA, a/k/a Russo, JUAN JOSE ALVARENGA-ALBERTO, a/k/a Sailen, JUAN FLORES-CASTRO, a/k/a Duende, JOSE DANIEL GONZALEZ-CAMPOS, a/k/a Flaco, JOSE SALVADOR GONZALEZ-CAMPOS, a/k/a Danger, JOSE MENDEZ-PERAZA, a/k/a Shadow, ERASMO HUMBERTO LIMA-MARTINEZ, a/k/a Tun Tun, NEHEMIAS JOEL MARTINEZ-HERNANDEZ, a/k/a Mysterio, JOSE CARLOS MERCADO-CRESPIN, a/k/a Payaso, DENIS DONALDO FUENTES-AVILA, DANIEL ALEXANDER DIAZ-ROMERO, a/k/a Manchas, GERARDO DAVILA-COLINDRES, a/k/a Cuervo, a/k/a Enano, MARVIN OTERO-SERRANO, a/k/a Vaca, a/k/a Bandallero, JORGE ALBERTO LANDAVERDE, a/k/a Grenas, JOSE SALINAS-ENRIQUEZ, a/k/a Martillo, NELSON ALEXANDER FLORES, a/k/a Mula, and CAROLINA GARCIA-MIRANDA, a/k/a Mamayema,** shall forfeit to the United States, pursuant to 18 U.S.C. § 1963:

a.     all interests the Defendant has acquired or maintained in violation of 18 U.S.C. § 1962, wherever located, and in whatever names held;

        b.     all interests in, securities of, claims against, or properties or contractual rights of any kind affording a source of influence over, any enterprise which the Defendant has established, operated, controlled, conducted, or participated in the conduct of, in violation of 18 U.S.C. § 1962;

        c.     all property constituting, or derived from, any proceeds which the Defendant obtained, directly or indirectly, from racketeering activity in violation of 18 U.S.C. § 1962.

## FORFEITURE ALLEGATION B

151.    The allegations contained in Count Four of this Second Superseding Indictment are re-alleged and fully incorporated by reference herein for the purpose of alleging forfeitures to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c).

152.    Upon conviction of any offense alleged in Count Three of this Second Superseding Indictment, Defendant **MARTIN NEFTALI AGUILAR-RIVERA, a/k/a Momia, a/k/a Pelon,** shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following ammunition:

- One round of .380 caliber "Tulammo 380 ACP" ammunition;

- One round of .380 caliber "R-P 380 Auto" ammunition;

- Eight rounds of 9mm "WIN 9mm Luger" ammunition; and

- Four rounds of .38 caliber "Federal 38 Special" ammunition.

## FORFEITURE ALLEGATION C

153.    The allegations contained in Count Five of this Second Superseding Indictment are re-alleged and fully incorporated by reference herein for the purpose of alleging forfeitures to the

United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c).

154.    Upon conviction of any offense alleged in Count Four of this Second Superseding Indictment, Defendant **JUAN JOSE JIMENEZ-MONTUFAR, a/k/a Chele Trece,** shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following firearms:

- One Browning Arms, Model 25, 6.35mm pistol, serial number 121498;
- One Kel-Tec, Model PF-9, 9mm pistol, serial number RVB81; and
- One Winchester, 12-guage shotgun, serial number 166220.

## FORFEITURE ALLEGATION D

155.    The allegations contained in Count Six of this Second Superseding Indictment are re-alleged and fully incorporated by reference herein for the purpose of alleging forfeitures to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c).

156.    Upon conviction of any offense alleged in Count Six of this Second Superseding Indictment, Defendant **JORGE ALBERTO LANDAVERDE, a/k/a Grenas,** shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following firearm and ammunition:

- One Taurus, Model 941, .22 caliber revolver, serial number FT30564; and
- Five boxes of .22 caliber ammunition.

62

## SUBSTITUTE ASSETS

157.     If any of the property described above in Forfeiture Allegation A, as a result of any

act or omission of the Defendants:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without
          difficulty,

it is the intention of the United States, pursuant to 18 U.S.C. § 1963(m), to seek forfeiture of any

other property of the Defendants up to the value of the property described in Paragraphs 149–150

above.

               **A TRUE BILL.**

                **s/Foreperson**
                **FOREPERSON**

**BENJAMIN C. GLASSMAN**
**United States Attorney**

**BRIAN J. MARTINEZ (CA224587)**
**JESSICA H. KIM (0087831)**
**Assistant United States Attorneys**