# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

NELSON ALEXANDER FLORES,
a/k/a Mula,

                Defendant.

**Case No. 2:17-CR-164(10)**
**JUDGE EDMUND A. SARGUS, JR.**

---

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

JUAN PABLO FLORES CASTRO,
a/k/a Juan Pablo Guerra-Flores
a/k/a Duende,

                Defendant.

**Case No. 2:17-CR-164(17)**
**JUDGE EDMUND A. SARGUS, JR.**

## OPINION AND ORDER

This matter is before the Court on Defendant Juan Pablo Flores Castro's Motion for Severance of Trial (ECF No. 910) and Defendant Nelson Alexander Flores' Motion for Severance of Trial (ECF No. 1139).  The Government opposes both motions.  (ECF Nos. 924, 1148.)  For the reasons that follow, the Court **DENIES** both motions.

## I.

On February 15, 2018, the grand jury returned the Second Superseding Indictment in this case.  (ECF No. 179.)  Count One alleges that the two moving defendants, Mr. Flores-Castro, Mr. Alexander Flores, and 21 co-defendants are all members and associates of La Mara

Salvatrucha, commonly known as MS-13.  The charging document alleges that MS-13 is a

violent, transnational criminal organization composed primarily of immigrants or descendants of

immigrants from El Salvador, Guatemala, and Honduras.

Count One further alleges that all 23 defendants conspired to violate federal law by

conducting and participating, directly and indirectly, in the conduct of the affairs of a criminal

enterprise (MS-13) through a pattern of racketeering activity involving multiple acts of murder,

extortion, drug trafficking, money laundering, obstruction of justice, and witness tampering, in

violation of 18 U.S.C. § 1962(d) ("RICO").  The Second Superseding Indictment identifies 59

overt acts, including five homicides and a host of other crimes, that the defendants and others

allegedly committed in furtherance of the racketeering conspiracy.

Nineteen defendants have entered guilty pleas; one defendant remains at-large; and three

defendants are proceeding to trial in May 2021 – the two defendants whose motions are before the

Court, Messrs. Flores Castro and Alexander Flores, and defendant Cruz Alberto-Arbarngas.  All

three of these defendants are charged in the Second Superseding Indictment with conspiracy to

commit racketeering (Count One).   Mr. Alberto-Arbarngas and Mr. Flores Castro face additional

charges for murder in aid of racketeering and murder through the use of a firearm during and in

relation to a crime of violence for the murders of Wilson Villeda (Count Three) and Salvador

Martinez-Diaz (Counts Four and Five).

**II.**

Federal Rules of Criminal Procedure 8(b) and 14(a) govern the joinder and severance of

defendants for trial.  The Sixth Circuit recently stated:

> Defendants may be indicted together where they collectively participate in the same
> offense. Fed. R. Crim. P. 8(b). While a court may order separate trials if
> "consolidation for trial appears to prejudice a defendant," Fed. R. Crim. P. 14(a),
> severance is not the norm. "Joint trials are favored[.]" *United States v. Tocco*, 200
> F.3d 401, 413 (6th Cir. 2000).  It's not just more efficient to have one trial and one

2

set of evidentiary admissions for all defendants at once, *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992), but a joint trial also decreases the risk of inconsistent verdicts, *Richardson v. Marsh*, 481 U.S. 200, 210 (1987).  Severance is appropriate, then, "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants[.]" *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

*U.S. v. Tisdale*, 980 F.3d 1089, 1094 (6th Cir. 2020) (parallel citations omitted).  In other words, severance is necessary "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

The Sixth Circuit and the Supreme Court have explained the "strong policy presumption" in favor of joint trials, *United States v. Carver*, 470 F.3d 220, 238 (6th Cir. 2006), stating "joint trials conserve [government] funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *United States v. Lane*, 474 U.S. 438, 449 (1986) (quotation omitted).  For all of these reasons, "[t]here is a preference in the federal system for joint trials." *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

Courts have refused to grant severance on the grounds that: (i) "a defendant might have a better chance for acquittal if tried separately"; (ii) "the co-defendants had different levels of culpability than the defendant seeking severance"; or (iii) "evidence may be admissible against one defendant but not against others." 1A Charles Alan Wright et al., *Federal Practice and Procedure*, § 223 (4th ed. 2015) (collecting cases); *see also United States v. Gardiner*, 463 F.3d 445, 473 (6th Cir. 2006); *United States v. Lloyd*, 10 F.3d 1197, 1215 (6th Cir. 1993).  "The risk of prejudice will vary with the facts in each case," and "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.  Motions for severance under Rule 14 thus fall under the "sound discretion" of the district court.  *Id.* at 541.

3

**III.**

The defendants together and/or separately move for severance based on alleged constitutional violations, on the contention that the evidence admitted against a co-defendant will be prejudicial, and because there is a potential for antagonistic defenses at trial.  The Government opposes severance, arguing that (A) the defendants have failed to show there is a serious risk that a joint trial would compromise a specific right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence, (B) Mr. Alexander Flores has failed to show that evidence admitted against a co-defendant will prejudice him, (C) Mr. Flores Castro has failed to show the existence of prejudice from antagonistic defenses, and (D) that there are no applicable exceptions or reasons not to follow the policy preferences that strongly favor joint trials.

**A.      The Sixth Amendment's Confrontation Clause**

Both Mr. Flores Castro and Mr. Alexander Flores maintain that failure to sever their cases will violate their rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.  Specifically, the defendants contend that their constitutional rights will be violated because of (1) the potential admission of co-defendants' out-of-court statements at trial, and (2) a videotaped deposition of an unavailable witness that may be used at trial

**1.      Co-Defendants' Statements**

Mr. Flores Castro asserts that in a joint trial, the government "may . . . attempt to use inculpatory information elicited from co-defendant(s) at the time of their arrest or on other known and unknown occasions" and that in the event he is unable to cross-examine such declarants, his Sixth Amendment rights would be violated.  (Mot. at 1, ECF No. 910.)  This Court disagrees.

4

First, the Government has the burden to establish the existence of the charged conspiracy, where statements by co-defendants will likely be admissible at trial as co-conspirator statements.  *See* Fed. R. Evid. 801(d)(2)(E).  Other statements by co-defendants could be admissible as "statements against interest."  *See* Fed. R. Evid. 804(b)(3).  Either way, such statements would not raise Confrontation Clause concerns because they are not testimonial.  *See Giles v. California*, 554 U.S. 353, 376 (2008) ("[O]nly *testimonial* statements are excluded by the Confrontation Clause.") (emphasis in original).

Joint trials regularly involve evidence that is admissible against some defendants but not others.  This alone is not a reason for severance.  *Gardiner*, 463 F.3d at 473 ("Severance should not be granted where the same evidence is admissible against all defendants, nor should it be granted where evidence is admissible against some defendants but not others."); *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992) ("[S]everance is not required if some evidence is admissible against some defendants but not others.").  The Supreme Court has instructed that measures short of severance can be taken to ensure that the admission of out-of-court statements does not implicate Confrontation Clause considerations, such as appropriate redactions and the use of limiting instructions to the jury. *Marsh*, 481 U.S. at 211.

Courts can "cure" any risk of prejudice "with proper [limiting] instructions," which "juries are presumed to follow."  *Zafiro*, 506 U.S. at 539 (quotation omitted); *see also United States v. Swift*, 809 F.2d 320, 323 (6th Cir. 1987) ("[A] jury is presumed capable of sorting out evidence and considering each count and each defendant separately.").  Indeed, the Sixth Circuit has published several pattern jury instructions for this exact scenario.  *See* Sixth Circuit Pattern Jury Instructions, § 2.01D (2019) ("Separate Consideration—Multiple Defendants Charged with Different Crimes"); *id.* § 7.18 ("Separate Consideration—Evidence Admitted Against Certain Defendants Only").

Further, it is not clear whether the unnamed declarants about whom Mr. Flores-Castro has expressed concern will testify at trial.  To the extent that a declarant takes the witness stand and is subject to cross-examination, the admission of his or her statements would not cause any Sixth Amendment problems.  *Cf. Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (explaining that Sixth Amendment is violated when statement of "nontestifying codefendant is introduced at … joint trial") (emphasis added).  Moreover, the defendant has failed to point to any particular statement for the Court to consider in assessing the prejudice that allegedly would result from their use at trial.  *See United States v. Ledbetter* ("*Short North Posse*"), 137 F. Supp. 3d 1042, 1060 (S.D. Ohio 2015) (denying severance motion brought by defendant who failed to identify "a single out-of-court statement from any co-defendant that might incriminate him") *aff'd*  929 F.3d 338, 346 (6th Cir. 2019).

Thus, Mr. Flores-Castro's speculation about the possible introduction of co-defendants' out-of-court statements fails to qualify a showing of "compelling, specific, and actual prejudice" warranting severance.  *Saadey*, 393 F.3d at 678.  And, the Court is persuaded that other measures other than severance are sufficient to avoid any potential prejudice.

### 2.      Rule 15 Deposition

The Government was granted the opportunity to depose Mr. Mejia-Martinez given his likely unavailability to testify at trial.  (Order, ECF No. 582).  That deposition took place on February 27, 2019.  (Dep. Tr., ECF No. 737).  Pursuant to Federal Rule of Criminal Procedure 15, the defendants were permitted to attend that deposition and question Mr. Mejia-Martinez or, in the alternative, to waive their right to do so. (Order, ECF No. 582).  Mr. Alexander Flores, however, was a fugitive at the time, and was believed to be residing outside the United States.  Accordingly, neither he nor his attorneys attended the deposition or questioned Mr. Mejia-Martinez.  Mr. Alexander Flores argues

that his rights under the Confrontation Clause will be violated if he is not severed from his co-defendants at trial because he was not present at the deposition of this potential witness.

The Court agrees with the Government that this argument is premature for two reasons. First, the Government has not moved to introduce Mr. Mejia-Martinez's deposition (or any portions of it) at trial, so the Court has no way of evaluating the nature of his statements in relation to Mr. Alexander-Flores' Confrontation Clause rights. Second, the taking of a Rule 15 Deposition does not ensure its admissibility at trial even if the Government does so move. *See* Fed. R. Crim. P. 15(f) ("An order authorizing a deposition to be taken under this rule does not determine its admissibility. A party may use all or part of a deposition as provided by the Federal Rules of Evidence.").

Therefore, at this stage in the proceedings, Mr. Alexander Flores' severance argument based on an alleged Confrontation Clause violation is speculative. Likewise, his Confrontation Clause concerns are premature and ignore less drastic measures the Court could take, such as issuing limiting instructions regarding separate consideration of the evidence and the defendants' guilt.

**B.      Spillover Evidence**

Mr. Alexander Flores contends that the jury might convict him not because of his own guilt, but rather, by imputing guilt based on the conduct of, and evidence against, his co-defendants—particularly with respect to the charged homicides. He asserts that, "[b]ecause of the unusually violent nature of the homicides, and the multiple, overlapping conspiracies alleged throughout the Indictment, it is unlikely the jury will be able to separate those charges from the charges against Mr. Flores. The Government's presentation of evidence would inevitably result in a 'spillover' of evidence unrelated or minimally related to Mr. Flores." (Govt's Mot. at 6, ECF No. 1148.)

The Government responds that this argument misapprehends the nature of the RICO conspiracy charge in Count One in that (1) there will be no "spillover" of evidence because all three

7

of these defendants were charged in the same racketeering conspiracy, and (2) even if there was a potential for the "spillover" of evidence from the addition of substantive counts for two homicides, that is not a basis for severance.  This Court agrees.

### 1.      Count One - Racketeering Conspiracy

The three defendants who are left to be tried in this case were all charged in the same racketeering conspiracy, and evidence regarding all of the racketeering activity from the Second Superseding Indictment is relevant to each defendant, whether in one joint trial or in several stand-alone trials.  This assumes that the Government establishes a conspiracy.  If it does not, evidence admissible only within Federal Rule of Evidence 801(d)(2)(E) would be inadmissible.  The defendants are all accused of conspiring to conduct or participate in the affairs of an "enterprise" (MS-13) "through a pattern of racketeering activity."  (ECF No. 179, ¶ 31).  Here, that "pattern" is alleged to consist of multiple acts of murder, robbery, extortion, witness tampering, witness retaliation, drug trafficking, and money laundering.  That is, the crime alleged in Count One is agreeing with others to conduct or participate in an enterprise that collectively engaged in the racketeering activities just described; not that anyone personally committed those crimes.  *See Fowler*, 535 F.3d at 420–21; *United States v. Saadey*, 393 F.3d 669, 676 (6th Cir. 2005).

Evidence of the homicides (and other crimes) is relevant against Mr. Alexander Flores because it shows both a "pattern of racketeering activity" and the underlying existence of MS-13 as an enterprise.  *See Short North Posse*, 929 F.3d at 346 ("That makes the crimes of Robinson's codefendants in furtherance of that enterprise relevant vis-à-vis Robinson—they speak to the existence and purpose of the enterprise that Robinson was charged with aiding. Thus, much of the evidence putatively against Robinson's codefendants would be admissible against him in a separate trial.").  Because the Second Superseding Indictment alleges that all of the overt acts were taken "in furtherance of" the racketeering conspiracy, if proven, evidence regarding all of those acts is relevant

against Mr. Alexander Flores, regardless of whether he personally committed each act or whether each act is charged separately as a substantive offense.

### 2. Potential Spillover Evidence

Mr. Alexander Flores and the Government agree that to the extent there is any spillover-of-evidence, this, standing alone, is not an adequate reason to sever his trial. *See e.g.*, *United States v. Dimora*, 750 F.3d 619, 631 (6th Cir. 2014) ("[S]pillover of evidence . . . does not require severance." (quotation omitted)); *Gardiner*, 463 F.3d at 473 (rejecting argument that severance was required "because the overwhelming evidence at trial pertained [only] to [co-defendant's] case"); *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993) ("[D]isparity of evidence is generally not enough to cause the granting of a separate trial."); *United States v. Causey*, 834 F.2d 1277, 1288 (6th Cir. 1987) ("[A] defendant is not entitled to a severance simply because the evidence against a codefendant is far more damaging than the evidence against him. . . . [This] is simply a fact of life in multiple defendant cases.").

The Government highlights that the Sixth Circuit recently rejected this argument in a RICO conspiracy case because there (as here), "[a]ll three defendants were members of the same gang, were charged in the same conspiracy, and most of the evidence was admissible against each of them." *U.S. v. Tisdale*, 980 F.3d 1089 (6th Cir. 2020) (finding no prejudice even where moving defendant was not charged with separate, substantive crimes of violence as were his co-defendants). Similarly, the Sixth Circuit recently affirmed a joint trial in the *Short North Posse* case which involved five defendants and eight murder counts, despite the defendants' "generalized concerns that are inherent in joint trials . . . that proof is greater against a codefendant, that each may have had a better chance of acquittal in separate trials, and that inflammatory evidence was admitted against one defendant, not directly involving another . . . ." *Short North Posse*, 929 F.3d at 346 (brackets and quotations omitted). There, the court found that these concerns "have been held to fall short of compelling prejudice" warranting severance under Rule 14(a). *Id.*

9

### C.      Possibility of Antagonistic Defenses

Mr. Flores Castro contends that "[t]he antagonistic nature of various defenses present a serious risk that a joint trial would prevent the jury from making a reliable judgment about [his] guilt or innocence and level of his involvement (if any)." (ECF No. 910 at 2.)  Mr. Flores Castro provides no details about the "various defenses" he believes could be problematic at trial.

Antagonistic defenses typically arise "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *Harris*, 9 F.3d at 501.  To prevail on such a claim, "[t]he burden is on defendants to show that an antagonistic defense would present a conflict so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *Gardiner*, 463 F.3d at 473 (quotation marks and citation omitted).  It is not enough for defendants to "contend that the very nature of their defenses, without more, prejudiced them." *Zafiro*, 506 U.S. at 539-540.  Instead, a defendant must "articulate . . . specific instances of prejudice." *Id.* Mr. Flores Castro has not carried his burden.

The defendant has not identified any set of irreconcilable defenses, nor has he explained which individuals will present those defenses and how they will lead to jury confusion and significant prejudice at trial.  Rather, Mr. Flores Castro's motion refers generally to the possibility that some unidentified defendant(s) may seek to present some unidentified and allegedly antagonistic defense(s) at trial.  This is insufficient.  "Hostility among defendants or the attempt of one defendant to save himself by inculpating another does not require that defendants be tried separately." *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014); *see United States*

10

*v. Vinson*, 606 F.2d 149, 154 (6th Cir. 1979) ("[T]he mere fact that co-defendants attempt to blame each other does not compel severance.")

**D.     Policy**

Based on the above findings that there is no "serious risk that a joint trial would compromise a specific trial right of one of the defendants," *Zafiro*, 506 U.S. at 539, the Court relies here on the policy favoring joint trials for their efficiency and their effects of decreasing the risks of inconsistent verdicts. *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992); *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). Conducting multiple trials in the same case "produce[s] additional labor for judges and juries, which results from the unnecessary repetition of evidence and trial procedures." *Id.* These concerns are heightened in racketeering cases given the elements of the offense the Government must prove at trial—including evidence of the racketeering enterprise and the defendants' participation within it through a pattern of racketeering activity. *Short North Posse*, 929 F.3d at 346. Conducting multiple racketeering trials "[f]orc[es] the Government to prove these overlapping facts again and again in multiple trials would only cause the sort of unnecessary expense, inconvenience, and delay that joinder is meant to avoid." *Id.*

Similarly, denial of the motions for severance prevents the chance of inconsistent verdicts for members of the same conspiracy. The Supreme Court has warned that the "scandal and inequity of inconsistent verdicts" is real and should be avoided whenever possible. *Marsh*, 481 U.S. at 210 ("Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit.").

11

**IV.**

For the reasons stated above, the Court **DENIES** Defendant Juan Pablo Flores Castro's

Motion for Severance of Trial (ECF No. 910) and **DENIES** Defendant Nelson Alexander Flores' Motion

for Severance of Trial (ECF No. 1139).

**IT IS SO ORDERED.**


**12/30/2020**                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                               **EDMUND A. SARGUS, JR.**
                                                           **UNITED STATES DISTRICT JUDGE**