UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br> vs.<br><br>CRUZ ALBERTO-ARBARNGAS,<br> a/k/a Cruz Alvarenga-Alberto<br> a/k/a Cruz Octaviano Alberto-Alvarenga<br> a/k/a Cruzito<br><br> and<br><br>NELSON ALEXANDER FLORES,<br> a/k/a Mula<br><br>   Defendants. | CASE NO. 2:17-CR-164<br><br>JUDGE EDMUND A. SARGUS, JR. |

## GOVERNMENT'S MOTIONS IN LIMINE

The United States, by and through undersigned counsel, submits the following motions in limine in connection with the upcoming MS-13 trial, scheduled to begin on May 24, 2021.

### I. BACKGROUND

The Second Superseding Indictment charged twenty-three defendants with conspiracy to commit racketeering and related offenses for their involvement with La Mara Salvatrucha ("MS-13"). (Doc. #179). Twenty defendants have entered guilty pleas; one defendant remains at-large[1]; and two defendants are proceeding to trial in May 2021—Cruz Alberto-Arbarngas ("Cruz") and Nelson Alexander Flores ("Mula").

---

[1] Daniel Alexander Diaz-Romero ("Manchas") remains a fugitive at this time.

Under the Court's scheduling order, which was proposed and agreed-to by all parties, motions in limine not related to the disclosure of Jencks Act material must be filed 90 days before trial—i.e., by February 13, 2021. (Doc. #1010, PAGEID #4089).

## II.  LEGAL STANDARDS

Motions in limine are designed to ensure fair and speedy trials by excluding evidence that is clearly inadmissible, eliminating lengthy evidentiary determinations in the midst of trial, and allowing the parties to formulate their trial strategy based on the court's pre-trial rulings. *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983); *In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 348 F. Supp. 3d 698, 721 (S.D. Ohio 2016) (Sargus, J.).  The decision to grant a motion in limine rests in the discretion of the district court. *Luce*, 713 F.2d at 1239-40.

## III.  ANALYSIS

As the Court is aware, the Government estimates that this trial could last between eight and twelve weeks.  The presentation of evidence and the length of trial are complicated by two factors: the amount of Spanish-language evidence (including the number of Spanish-speaking witnesses and Spanish recordings and documents) and the number of racketeering acts at issue.  To facilitate a fair, speedy, and comprehensible trial, the Government moves for the following pre-trial rulings regarding the presentation of evidence: (i) a ruling permitting the Government to ask leading questions of Spanish-speaking witnesses; (ii) a ruling permitting the Government to introduce and read English translations of Spanish recordings and documents without the need to present the entirety of the underlying evidence to the jury; (iii) a ruling permitting the Government to recall witnesses during the Government's case-in-chief to testify about different racketeering acts; and (iv) a ruling precluding defense counsel from referencing the potential criminal penalties their clients face if convicted.

### A.  Motion in Limine #1:  Allowing the Limited Use of Leading Questions for Spanish-Speaking Witnesses

The Government respectfully moves for leave of Court to ask a limited number of leading questions to Spanish-speaking witnesses.  It has become clear throughout this investigation that a large number of witnesses speak only Spanish, with very limited (if any) proficiency in English.  Several witnesses also have limited formal education, even in their native Spanish.  Effective communication between English-speaking attorneys and Spanish-speaking witnesses can become strained at times, even with the aid of an interpreter.  To facilitate an orderly trial, to aid the jury in understanding the evidence, and to avoid wasting time, the Government respectfully moves for an order permitting the limited use of leading questions to lay a foundation for a line of questioning and, if necessary, to assist in developing coherent testimony from Spanish-speaking witnesses.

Federal Rule of Evidence 611 grants district courts wide latitude to control the mode and order of examining witnesses.  *United States v. Terry*, 729 F.2d 1063, 1067 (6th Cir. 1984); *see also United States v. Fields*, 763 F.3d 443, 465 (6th Cir. 2014) (observing that Rule 611(a) provides trial courts "substantial discretion").  The Rule states that, although leading questions should not ordinarily be used on direct examination, they are permissible "as necessary to develop the witness's testimony."  Fed. R. Evid. 611(c).  The Advisory Committee Notes list several recognized exceptions to the general bar on leading questions—including exceptions for "undisputed preliminary matters" and "adult[s] with communication problems."  Fed. R. Evid. 611 1972 advisory committee's note to subdivision (c).  In light of the Rule and the Advisory Committee Notes, several courts have recognized that leading questions are permissible for witnesses who do not speak English, even when interpreters are translating the questions and answers.  *United States v. Ajmal*, 67 F.3d 12, 16 (2d Cir. 1995); *United States v. Rodriguez-Garcia*, 983 F.2d 1563, 1570 (10th Cir. 1993).

The Government recognizes that the Court will employ Spanish interpreters at trial. Nevertheless, the Government respectfully requests leave to ask a limited number of leading questions, as necessary, to "lay a foundation for a line of questioning or to assist in developing coherent testimony" from Spanish-speaking witnesses. *See United States v. Mulinelli-Navas*, 111 F.3d 983, 990 (1st Cir. 1997). Faced with "similar situation[s]" involving "non-English speaking witnesses testifying through a translator," trial courts have not hesitated to exercise their discretion in allowing leading questions on direct examination. *E.g.*, *Ajmal*, 67 F.3d at 16 (describing it as "a permissible exercise of the district court's discretion"); *Rodriquez-Garcia*, 983 F.2d at 1570 (describing it as a "sound practice" given the "language situation"). *Cf. United States v. Baires*, 254 F. App'x 196, 200 (4th Cir. 2007) (employing special procedures on cross examination to "prevent any confusion caused by translations and the language barrier" in similar trial involving MS-13). This Court should follow suit.

### B.  Motion in Limine #2:  Admission of Spanish Recordings and Documents and English Translations of Spanish-Language Evidence

The Government also seeks leave to introduce into evidence certain recordings/documents that are fully or partially in Spanish, as well as English-language translations of those recordings/documents. The Government further requests leave to read into evidence all or part of the English-language transcriptions or translations, and for leave to allow the jury to receive and retain hard copies of any admitted transcripts and translations. The Government submits that this method of presentation is both legally sound and helpful to the jury, and the Government provides early notice of this method of presentation for the benefit of the Court and the parties.[2]

---

[2] The Government does not seek to have the Court make any final evidentiary rulings on the admissibility of any potential recordings/documents. The Government is simply seeking an initial ruling from the Court that both original Spanish recordings/documents and their English translations will be admitted as substantive evidence (assuming that the recordings/documents are otherwise admissible), and that the Government's intended method of presentation will be acceptable.

The Government intends to introduce a number of Spanish-language recordings and documents into evidence at trial. This evidence generally consists of communications between the defendants, their co-conspirators, and family members on Facebook/Facebook Messenger or by letter, recordings made by confidential informants, and recorded jailhouse phone calls. Accordingly, at trial, the Government will seek to introduce into evidence not only the original recordings/documents, but also their English-language translations, which have been provided to defense counsel well in advance of trial.[3] Assuming they are otherwise admissible under the Federal Rules of Evidence, both the Spanish-language recordings/documents and the English-language translations should be admitted as substantive evidence.

The Sixth Circuit has long upheld the practice of providing the jury with a transcript to help them follow a tape recording being played during trial. *United States v. King*, 272 F.3d 366, 372-73 (6th Cir. 2001) (collecting cases). Ordinarily, "litigants offer recordings as evidence and use transcripts as interpretive aids for the jurors' benefit." *United States v. Kifwa*, 868 F.3d 55, 60 (1st Cir. 2017); *see also, e.g.*, *United States v. Borda*, 178 F.3d 1286, 1999 WL 294540, at *9 (4th Cir. 1999) ("[T]ranscripts of English conversations are typically used as aids for the jury and not admitted into evidence . . . ."); *United States v. Moreno*, 933 F.2d 362, 375 (6th Cir. 1991) ("[T]he district court exercised sound discretion in admitting the tapes and allowing the jury to use a transcript of the tapes as an aid.").

---

[3] The parties proposed—and the Court adopted—a procedure for resolving any disputes over the accuracy of the English translations. (*See* Doc. #1010, PAGEID #4089). Under that procedure, the parties must provide English translations of Spanish-language material that they intend to use at trial to all counsel "75 days before trial"—i.e., by March 10, 2021. (*Id.*). A party who seeks to contest a translation must file a motion with the Court "45 days before trial." (*Id.*). The Court will then hold a hearing to address such motion at least "30 days before trial." (*Id.*). This procedure was designed to comply with the Sixth Circuit's "preferred practice[s]" for using transcripts of recordings at trial. *See United States v. West*, 948 F.2d 1042, 1044 (6th Cir. 1991). To date, defense counsel have not filed any motions contesting the accuracy of any English translations provided in discovery.

Nevertheless, "the relation between tapes and transcripts changes when the tapes are in a foreign language." *United States v. Franco*, 136 F.3d 622, 626 (9th Cir. 1998). For obvious reasons, "playing foreign language tapes endlessly to an uncomprehending jury is not required." *Kifwa*, 868 F.3d at 60 (quotation omitted). Instead, "transcripts containing translations of such recordings may be admitted into evidence so long as they are reliable and properly authenticated." *Id.* That is, when dealing with foreign-language recordings, "courts have admitted English transcripts of [those] conversations as substantive evidence in view of the fact that the jury would not understand the spoken language." *Borda*, 1999 WL 294540, at *9 (collecting cases); *see also Franco*, 136 F.3d at 626 (noting that "the transcripts substitute for the tapes" as primary evidence). The Sixth Circuit has repeatedly affirmed the admission of English transcripts of Spanish-language recordings, particularly where the defendant has not challenged the accuracy of the translations. *See, e.g.*, *United States v. Liddell*, 64 F. App'x 958, 963 (6th Cir. 2003); *United States v. Martinez*, 21 F. App'x 338, 339-40 (6th Cir. 2001); *United States v. Garcia*, 20 F.3d 670, 673 (6th Cir. 1994).

Once admitted as substantive evidence, the Government may then: (i) use readers to read the English-language translations as an alternative to playing the Spanish-language tapes (or displaying the entirety of the Spanish-language documents); (ii) provide the jury copies of the English translations to follow along; and (iii) send these admitted translations back to the jury room along with other pieces of evidence. *United States v. Pena-Espinoza*, 47 F.3d 356, 359-60 (9th Cir. 1995) (holding that English-language translations of Spanish-language recordings were admissible as substantive evidence; could be summarized or read verbatim during government's case-in-chief; and were allowed in jury room during deliberations); *United States v. Rengifo*, 789 F.2d 975, 983-84 (1st Cir. 1986) (same); *see also United States v. Murillo*, 284 F. App'x 982, 984 n.1 (3d Cir. 2008) (allowing use of readers).

For these reasons, the Government moves for leave to use the following protocol for Spanish recordings/documents that may be introduced at trial: the Government may (i) introduce into evidence copies of recordings/documents that are partially or wholly in Spanish; (ii) introduce into evidence transcriptions and translations of those Spanish-language recordings/documents that are in English; (iii) read into evidence all or part of the English-language translations; (iv) provide the jury with hard-copy translations so that they may follow along more easily; and (v) ask that the Court allow the jury to take into the jury room any admitted transcriptions or translations.

**C. Motion in Limine #3:  Allowing the Government to Recall Certain Witnesses**

The Government respectfully requests that the Court allow the Government to call law-enforcement witnesses and cooperating co-conspirators on more than one occasion during its case-in-chief.  This mode of presentation will greatly assist the jury in understanding the evidence and will minimize the chance of juror confusion or wasting time.

A racketeering trial is, in essence, a series of mini-trials.  At the upcoming trial in this case, the Government will present evidence of the charged racketeering conspiracy and multiple racketeering acts committed by the defendants and their co-conspirators.  The facts surrounding each of those acts could, in a non-racketeering case, be the subject of their own trial.  To assist juror comprehension, the Government will attempt—to the extent possible—to present evidence about particular racketeering acts or activities together so that the jury can best fulfill its fact-finding mission.  For example, the Government might bunch together the witness testimony and evidence regarding a particular murder instead of interspersing that evidence across a multi-month trial and jumping around daily between countless incidents, some of which are stand-alone counts and others of which are merely evidence of the MS-13 enterprise or predicate acts of racketeering that tend to prove the conspiracy charged in Count 1.

In this case, however, several witnesses have knowledge of multiple incidents relating to the charged racketeering conspiracy. Allowing the Government to call those witnesses on more than one occasion will greatly assist the jury in understanding the evidence by allowing them to focus on particular incidents one at a time (to the extent possible). As an example, the Government might call a law-enforcement agent to provide background information about a particular murder. The Government might then present other witnesses and evidence regarding that murder. Then, the Government might recall the agent at a later point during the trial to provide the jury with background information about a second murder before presenting additional testimony and evidence as to that incident.

Under Federal Rule of Evidence 611(a), this Court has broad powers and discretion regarding the mode and order of examining witnesses and presenting evidence. In this case, the most effective procedures for helping the jury determine the truth is to allow the Government to present its evidence in a logical, coherent manner, where the Government retains the ability to recall witnesses if needed. Allowing the Government to call a witness more than once will aid juror comprehension by allowing the jury to hear a more focused presentation of the underlying racketeering acts. District courts have employed similar procedures in other large-scale conspiracy cases before. *E.g.*, *United States v. Puckett*, 147 F.3d 765, 770 (8th Cir. 1998) (affirming district court's decision permitting the government to recall witnesses to testify "about different subject matter each time they were called to the stand"); *United States v. Messino*, 873 F. Supp. 1177, 1182 (N.D. Ill. 1995) (allowing government to recall certain witnesses "to present its case in a 'chronological, coherent manner,'" as that proposal "would be beneficial to the jury's following the government's case").

If the Government is not permitted to recall key witnesses, the Government will need to elicit every morsel of information every witness knows about every incident, including incidents that the jury has not yet heard about and may not hear about for weeks. The confusion to the jury will only be magnified when multiple defense lawyers then cross-examine that witness about his or her knowledge about a myriad of incidents, many of which the Government may not have presented any affirmative evidence about at that stage. That would also greatly impair the Government's ability to present its case in a fair and efficient manner, as its presentation of evidence about a particular incident might be interrupted by lengthy questioning about an unrelated incident for which the jury has little context.

Accordingly, the Government requests leave to call certain witnesses to testify more than once during its case-in-chief. If permitted to recall key witnesses, the Government will use this authority judiciously, without attempting to bolster the witnesses' credibility, and with the full understanding that defense counsel will remain free to cross-examine the witnesses about their testimony. *See Puckett*, 147 F.3d at 760.

**D. Motion in Limine #4: Precluding the Mention of Potential Criminal Penalties**

Finally, the Government respectfully moves to preclude defense counsel from presenting any evidence or argument regarding the potential criminal penalties their clients face—whether in voir dire, opening statements, the presentation of evidence, or closing arguments.

Imposing a sentence remains the province of the judge, not the jury. Given this clear demarcation between the jury's fact-finding role and the judge's role in imposing a sentence, the Sixth Circuit considers it "standard practice" to remind jurors that "[i]t would violate [their] oaths . . . to even consider the possible punishment in deciding [their] verdict." Sixth Circuit Pattern Jury Instructions § 8.05 (2019).

In this case, the risk of confusion regarding the jury's role as the finder of fact is heightened given the sentencing exposure the defendants face. If convicted on any one of the four remaining counts, a life sentence is authorized. 18 U.S.C. § 1963(a) (Count 1); 18 U.S.C. § 1959(a)(1) (Counts 3 and 4); 18 U.S.C. § 924(j) (Count 5). If Cruz were convicted on Count 3 or 4, a life sentence is <u>mandatory</u>. 18 U.S.C. § 1959(a)(1). For these reasons, defense counsel should be precluded from mentioning the possible penalties during the trial. *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999) (affirming trial court's decision to grant government's motion in limine concerning potential penalties that applied to defendant). Indeed, Chief Judge Marbley granted an identical motion in limine in the recent Short North Posse case involving the same charges and penalties. *United States v. Ledbetter ("Short North Posse")*, No. 2:14-cr-127, 2016 WL 1252982, at *14 (S.D. Ohio March 31, 2016). Here, as in the Short North Posse case, the stakes are simply too high to allow improper (even if inadvertent) entreaties to the jurors to reach a verdict based on anything other than the evidence before them.

## IV.  CONCLUSION

For these reasons, the Government respectfully requests that the Court **GRANT** the four motions in limine outlined above.

Respectfully submitted,

DAVID M. DeVILLERS
United States Attorney

s/Noah R. Litton
BRIAN J. MARTINEZ (CA 224587)
NOAH R. LITTON (OH 0090479)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone:  (614) 469-5715
E-mails:  Brian.Martinez2@usdoj.gov
                  Noah.Litton@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing Government's Motions in Limine was served this 8th day of February, 2021, electronically upon all counsel of record.

                                                      s/Noah R. Litton  
                                                      NOAH R. LITTON  
                                                      Assistant United States Attorney