IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 2:17-CR-00164 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE EDMUND A. SARGUS |
| -vs- | ) | |
| | ) | |
| NELSON ALEXANDER FLORES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT NELSON ALEXANDER FLORES'
RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTIONS IN LIMINE
(ECF NO. 1189)**

**I.     INTRODUCTION**

The government has filed four Motions in Limine (ECF No. 1189). For the reasons set forth below, Motions in Limine #1, #3, and #4 should be denied. As for Motion in Limine #2, Mr. Flores respectfully requests the Court permit additional briefing on the motion on or before April 9, 2021 and postpone ruling on the Motion until after April 9, 2021.

**II.    LAW AND ARGUMENT**

**A.    The government's motion to use leading questions for Spanish-speaking witnesses should be denied (Motion in Limine #1).**

The government seeks permission to ask a "limited number" of leading questions to Spanish-speaking witnesses. (Motion, p. 3). The law does not support the broad pre-trial ruling the government seeks here.

The starting point is Evidence Rule 611(c), which provides in relevant part: "Leading

questions **should not be used on the direct examination of a witness** except as may be necessary to develop the witness' testimony." (Emphasis added.)

The Advisory Committee Notes to Evidence Rule 611 state:

The rule continues the traditional view that the suggestive powers of the leading question are as a general proposition undesirable. Within this tradition, however, numerous exceptions have achieved recognition: The witness who is hostile, unwilling, or biased; the child witness or the adult with communication problems; the witness whose recollection is exhausted; and undisputed preliminary matters.

Fed. R. Evd. 611, Advisory Committee's Note to Subdivision (c).

The use of leading questions during direct examination of a witness lies within the sound discretion of the trial court. *United States v. Shoupe*, 548 F. 2d 636, 641 (6th Cir. 1977). Leading questions on direct examination are permitted when necessary to develop a witness' testimony. *United States v. Callahan*, 801 F. 3d 606, 623, citing Fed. R. Evid. 611(c). It is the province of the trial court to make this necessity determination. *Id*.

The government cites four cases for the proposition that leading questions are permissible for witnesses who do not speak English, even when interpreters are translating the questions and answers. *United States v. Ajmal*, 67 F.3d 12, 16 (2nd Cir. 1995); *United States v. Rodriguez-Garcia*, 983 F.2d 1563, 1570 (10th Cir. 1993); *United States v. Mulinelli-Navas*, 111 F.3d 983, 990 (1st Cir. 1997); and *United States v. Baires*, 254 F. Appx. 196, 200 (4th Cir. 2007).

We separately address each case below. However, none of the cases support the broad proposition the government offers here. First, none of the cases involve a pre-trial ruling that permits leading questions of an unknown number of government witnesses. In each case, the district court had the opportunity to see the witness testify and make a decision to allow leading questions based on an apparent communication problem observed by the district court. Second,

the cases only involved at most two witnesses, not the unknown number of witnesses at issue here. Finally, two of the cases did not even involve leading questions on direct examination. Thus, the government's reliance on these cases is misplaced.

### *United States v. Ajmal*

*Ajmal* did not involve a pretrial ruling. Rather, it involved the testimony of only one witness, a Pakistani national, who spoke little English and testified primarily through a translator. *Ajmal*, 67 F.3d at 15. After soliciting preliminary matters from the witness, the prosecutor stated, "your honor, I get the sense that some of the jurors can't hear. I just ask if they don't understand, if they can give you some indication." *Id*. To this, the district court replied:

> I think it might be better, if you would, to lead the witness because of the difficulty in translating here from Urdu to English and English to Urdu, if you were to lead the witness, it would be okay. Normally I would not allow an attorney to lead the witness, but I think in this circumstance it would be more appropriate.

*Id*. As a result, the vast majority of the witness' remaining testimony amounted to his affirming or rejecting statements made by the government. *Id*.

In affirming the district court's allowance of leading questions, the Second Circuit hardly gave the district court's decision a ringing endorsement. The Court wrote: "Despite Ajmal's assertion, the district court's allowance of leading questions in the present case was not **a clear abuse of discretion**." *Id*. at 16. The Court relied in part on the language of Evidence Rule 611(c), which the Court noted employs "words of suggestion, not command," as well as the Advisory Committee Note, recognizing the "almost total unwillingness to reverse for infractions [of the rule] manifested by appellate courts." *Id*. The Court concluded:

> While in many instances testimony given by way of translator may be indistinguishable from testimony given in one's native tongue, this is not always

3

> the case. Translations necessarily reflect the interpretations and understanding of the translator. Given this notable distinction between translated testimony and testimony given in one's native tongue, and given the "almost total unwillingness" of the courts of appeals to reverse for 611(c) infractions, we cannot say that the district court abused its discretion by allowing leading questions on direct examination of Afzal.

*Id*.

The Second Circuit's *Ajmal* decision was not a full-throated endorsement of the use of leading questions for non-English speaking witnesses. Simply because appellate courts have manifested an almost total unwillingness to reverse for violations of Evidence Rule 611(c), does not mean the procedure the government seeks to employ here is proper. Indeed, the Second Circuit seems to have relied in no small part on the unwillingness of appellate courts to reverse rather than because the Court thought the procedure used by the district court was proper and fair. At the very least, the district court in *Ajmal* had the opportunity to see the witness testify and was able to observe an apparent "difficulty in translating from Urdu to English and English to Urdu." *Ajmal*, 67 F.3d at 15. The prosecutor's statement also indicates the jurors had difficulty even hearing the witness. *Id*. Thus, under the circumstances of that particular case, and based on what the district court observed at trial, the use of leading questions was perhaps arguably proper or at least "not a clear abuse of discretion." *Id*. at 16.

What the government seeks here, however, is an open-ended ruling, with no governor, that permits leading questions of an unknown number of witnesses before this Court has the opportunity to observe the witness and determine for itself whether there is, in fact, a communication problem. The Second Circuit's *Ajmal* decision provides no support for the government's request here.

4

### *United States v. Rodriguez-Garcia*

The government takes *Rodriquez-Garcia* entirely out-of-context and relies on *dicta* to support its argument. The case involved only one witness and neither a pretrial ruling nor apparently any leading questions. In *Rodriguez-Garcia*, the defendant claimed the government violated his rights by asking leading questions of its chief witness. *Rodriguez-Garcia*, 983 F.2d at 1570. However, the defense was unable to identify in the record any instance where the prosecutor actually used leading questions on direct examination nor any prejudice. The Tenth Circuit noted: "Rodriguez neither pinpoints an instance when counsel used a leading question nor identifies how he was thereby prejudiced." *Id*. In what amounts to *dicta*, the Court also agreed with the government's argument that "in the event that a leading question was propounded . . . it was permitted as 'necessary to develop the witness' testimony." *Id*. Thus, the Tenth Circuit's decision, especially the *dicta* relied on by the government, does not support the broad ruling the government seeks here.

### *United States v. Mulinelli-Navas*

Like *Ajmal* and *Rodriguez-Garcia*, the First Circuit's decision in *Mulinelli-Navas* did not involve a pre-trial ruling on a motion in limine. In addition, it did not involve non-English speaking witnesses. Rather, the issue was whether the district court abused its discretion by allowing the prosecutor to use leading questions on a single government witness who appeared to have trouble testifying. *Mulinelli-Navas*, 111 F.3d at 990. The First Circuit upheld the use of leading questions in this instance because the "transcript revealed a witness who was, at times unresponsive or showed lack of understanding," and the questions were "limited to questions intended to lay a foundation for a line of questioning or to assist in developing coherent testimony." *Id*.

Thus, the problem with the witness in *Mulinelli-Navas* arose during trial. Unlike here, the district court had the opportunity to see that the witness "was at times unresponsive or showed lack of understanding." *Id*. Only then did the district court permit leading questions. Nothing in the decision supports the proposition that leading questions are permissible for witnesses who do not speak English, at least before the district court has the opportunity to see the witnesses testify and determine whether the use of leading questions is justified.

### *United States v. Baires*

*Baires* did not involve the use of leading questions on direct examination. Rather, it involved a limitation on cross-examination of two government witnesses who spoke Spanish. Specifically, the district court sustained a government objection to the form of a question on cross-examination and directed defense counsel to ask questions, as opposed to stating a proposition, because "given the language barrier, statements of fact on cross-examination, were 'unfair to the witness.'" *Baires*, 254 F. Appx. at 200. The Fourth Circuit upheld the district court's ruling because it was a restriction on the manner of cross-examination, not the scope of cross-examination, and "was a reasonable way for the district court to resolve what it perceived as confusion caused to the Spanish-speaking witnesses by the manner of cross-examination using . . . statements, rather than questions." *Id*.

Accordingly, in each of the cases cited by the government, the district court had the opportunity to see the witness testify, to observe a communication problem, and either permit or (in one instance) restrict questioning based on the court's observation of the witness. As the First Circuit said in *Mulinelli-Navas*, "The use of leading questions '. . . must be left to the sound discretion of the trial judge **who sees the witness and can, therefore, determine in the interest**

**of truth and justice whether the circumstances justify leading questions** to be propounded to a witness by the party producing.'" *Mulinelli-Navas*, 111 F.3d at 990. The government's motion robs the Court of the critical prerequisite of seeing the witness testify before determining whether the circumstances justify leading questions.

Finally, the government's attempt to circumvent Rule 611(c) is not simply about violating a rule of evidence. "The vice of the leading question lies in its suggestion of an answer to a witness who, having been called by the party, is presumed to be inclined to favor the questioner." *United States v. Bryant*, 461 F.2d 912, 918 (6th Cir. 1972). "If counsel were allowed routinely to lead a witness on direct examination, the evidence elicited would all too often be that of the lawyer, not of the witness." *Id*. Thus, the unrestricted use of leading questions that the government seeks here threatens Mr. Flores' Sixth Amendment right to confront and cross-examine the witnesses against him, as he cannot cross-examine the prosecutor, and thus violates Mr. Flores' right to a fair trial. This is particularly true where the witnesses are presumably alleged co-conspirators and informants.

Accordingly, the government's Motion in Limine #1 should be denied.

### B. The Court should postpone a ruling on the government's Motion in Limine #2 until after April 9, 2021.

The Government moves for leave to use the following protocol for Spanish-language recordings and documents that may be introduced at trial: the Government wants to (1) introduce into evidence copies of recordings/documents that are partially or wholly in Spanish; (2) introduce into evidence transcriptions and translations of those Spanish-language recordings/documents that are in English; (3) read into evidence all or part of the English-language translations; (4) provide

the jury with hard-copy translations so that they may follow along more easily; and (5) ask that the Court allow the jury to take into the jury room any admitted transcriptions or translations. (Motion, p. 7). The government's motion is premature.

The use of a transcript of a recorded communication during trial is within the sound discretion of the trial court. *United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir. 1995). *See, also, United States v. Scarborough*, 43 F.3d 1021, 1025 (6th Cir. 1994) ("Use of transcripts not in evidence is permissible where the tape is in evidence, the defendant has not questioned the accuracy of the transcript, and the defendant has shown no prejudice").

For foreign language recordings, the parties may agree to forgo having jurors listen to recordings that they do not understand. *United States v. Kifwa*, 868 F.3d 55, 60 (6th Cir. 2017). In such circumstances, transcripts containing translations of such recordings may be admitted into evidence as long as they are reliable and properly authenticated. *Id*. When dealing with translations of foreign-language recordings, the transcripts ordinarily must be divulged to defense counsel sufficiently in advance of trial to allow him to assess their accuracy, raise objections, and craft an informed defense strategy. *Id*.

Here the government notes there is a procedure for resolving disputes over the accuracy of English translations of Spanish-language records or documents. (Motion, p. 5, fn. 3.) Under that procedure, the government must provide English translations of Spanish-language material that it intends to use at trial by March 12, 2021 (*i.e.*, 75 days before trial). A party who seeks to contest a translation must file a motion with the court by April 9, 2021 (*i.e.*, 45 days before trial).

Because Mr. Flores was added to the case late last year, and in order to allow defense counsel to finish reviewing discovery, including the English translations at issue, Mr. Flores

respectfully requests the Court permit additional briefing on the motion on or before April 9, 2021 and postpone ruling on the Motion until after April 9, 2021.

### C. The government's motion for permission to recall certain witnesses should be denied (Motion in Limine #3).

The mode and order of interrogation and presentation of evidence are matters placed within the discretion of the trial court. Fed. R. Evd. 611(a). Some courts have approved of the practice of recalling witnesses to testify to discrete incidents in cases involving complex conspiracies or activities occurring over a long period. *See, e.g., United States v. Dimora*, 843 F.Supp.2d 799, 822 (N.D. Ohio 2012). However, the interest in orderly presentation does not outweigh a defendant's right to a fair trial. *Id*. Recalling witnesses may bolster the credibility of the witness in the eyes of the jury or certainly leave the jury with the impression that the witness is unusually or particularly important.

Although some courts have allowed prosecutors to recall witnesses, the government's motion here suffers from terminal flaws. The government simply states: "several witnesses have knowledge of multiple incidents relating to the charged racketeering conspiracy." (Motion, p. 8.). However, the government has not identified how many witnesses it intends to recall, how many times it intends to recall them, or the subject matter of their testimony. As a result, there is nothing in the record from which this Court can conclude with any confidence that the government's request is warranted or will not otherwise jeopardize Mr. Flores' right to a fair trial.

If granted, the government will be free to recall as many witnesses as it wants, as many times it wants, on whatever subjects it wants. Since the government believes a racketeering trial is, "in essence, a series of minitrials" (Motion, p. 7), the government could theoretically recall the

same law enforcement agent (or informant), to testify about each "mini-trial," much like a narrator in a TV-crime series (*e.g.*, the narrator in the Netflix crime series *Narcos*). Indeed, this is exactly what the government intends to do. See Motion, p. 8 ("As an example, the Government might call a law-enforcement agent to provide background information about a particular murder . . . Then the Government might recall the agent at a later point . . . with background information about a second murder.")

  Although Mr. Flores will have the opportunity to cross-examine the witness each time, it is unclear whether Mr. Flores will be able to ask the same questions each time regarding the witness's credibility (*e.g.*, criminal record, plea bargains, prejudices, biases, etc.).  The direct examination may always be new. Not necessarily the cross-examination. Even if repetitive cross-examination questions are permitted, the jury may stop listening or caring. On the other hand, if repetitive cross-examination questions are not permitted, there is the risk the jury starts to believe an otherwise unreliable witness simply because he or she has testified on more than one occasion and cross-examination was limited on at least one occasion. Simply put, the effectiveness of cross-examination is diminished if counsel asks the same questions of the witness multiple times or elects (or is required) to question the witness only once.

  Finally, the government claims this is necessary to "minimize the chance of juror confusion or wasting time." (Motion p. 7.). Neither argument has merit. As for saving time, recalling witnesses will waste time. More important, this is not a particularly complex conspiracy case.

  Accordingly, the government's Motion in Limine #3 should be denied.

### D. The government's motion in limine to preclude the mention of criminal penalties should be denied (Motion in Limine #4).

Finally, the government seeks to prevent defense counsel from presenting "any evidence or argument regarding the potential criminal penalties their clients face." (Motion, p. 9.) What the government really wants is to prevent defense counsel from cross-examining informants and cooperating witnesses about the penalties they avoided by accepting a plea deal or agreeing to testify at trial. The government's argument assumes that if Informant A, for example, received a sentence significantly less than the sentence he or she otherwise faced, the jury may infer that Mr. Nelson faces a similar sentence if convicted. The problem is neither the U.S. Supreme Court nor the Sixth Circuit support the government's real goal here; specifically, to limit cross-examine of witnesses regarding the potential sentences they avoided by testifying for the government.

The starting point is the Confrontation Clause, which guarantees a criminal defendant the right to confront the witnesses against him or her. *Davis v. Alaska*, 415 U.S. 308, 315. "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id*. at 316. The cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness. *Id*. According to the Sixth Circuit, "[t]he Confrontation Clause of the Sixth Amendment guarantees a defendant an opportunity to impeach the credibility of a witness against him because **impeachment is fundamental to effective cross-examination**." (Emphasis added.) *United States v. Holden*, 557 F.3d 698, 704 (6th Cir. 2009), citing *Davis v. Alaska*, 415 U.S. 308, 315-318. It is this second prong; namely, the ability of defense counsel to impeach or discredit the witness that the government seeks to restrict

11

here.

The circuits are split on the question of whether a criminal defendant's confrontation rights are violated by restrictions on the cross-examination of a cooperating witness about the possible or maximum penalties he or she avoided by accepting a plea deal and agreeing to testify at trial. *See United States v. Lanham*, 617 F.3d 873, 884 (6th Cir. 2010) ("There is a circuit split on the issue of whether defendants should be prohibited from asking cooperating witnesses, and former co-conspirators, details about their sentences and sentencing agreements with the government to expose the witnesses bias, and the Sixth Circuit has not considered this issue in a published decision."); *Little v. Warren*, No. 2:14-CV-10166 (E.D. Mich. Oct. 16, 2015), 2015 U.S. Dist. LEXIS 140922, *12-13 (collecting cases).

The U.S. Supreme Court has not addressed this issue. *Warren*, 2015 U.S. Dist. LEXIS 140922, *12. Neither has the Sixth Circuit in a published decision. *Lanham*, 617 F.3d at 884; *Warren*, 2015 U.S. Dist. LEXIS 140922, *13.

The government cites *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999). The government's reliance is misplaced. Although a published decision, the issue in *Bilderbeck* was whether the district court abused its discretion in granting a government motion in limine prohibiting the defendant from inquiring on cross-examination into a (1) a co-conspirator's cooperation in other cases and (2) the federal penalties that the defendant – as opposed to the co-conspirator – faced. *Id.* at 974 ["Before trial, the government presented a motion in limine to prohibit Bilderbeck from inquiring during trial about (a) Ruiz's cooperation in other cases and (b) the federal penalties that Bilderbeck potentially faced (presumably, for the purpose of comparing Bilderbeck's potential penalties to the punishment Ruiz received)."] Thus, the issue identified by

12

the Sixth Circuit in *Lanham* (whether defendants should be prohibited from asking cooperating witnesses, and former co-conspirators, details about their sentences and sentencing agreements with the government to expose the witnesses bias) was not before the Sixth Circuit in *Bilderbeck*. At issue in *Bilderbeck* were the penalties faced by the defendant, not the witness.

The right of cross-examination is not absolute. *Warren*, 2015 U.S. Dist. LEXIS 140922, *11. Trial courts retain great discretion to impose reasonable limits on the cross-examination of witnesses. *Lanham*, 617 F.3d at 884.

The motion here implies that the government's interest in keeping from the jury information from which the jury might infer the Defendants' possible sentence if convicted outweighs the Defendant's Sixth Amendment right to confront witnesses, especially as to the witness's credibility, motives, biases, prejudices, and, most important, ulterior motives.

Mr. Flores respectfully urges this Court to reject this argument and side with those circuits that have likewise rejected the argument and allowed cross-examination as to the number of years witnesses might have faced absent cooperation. *United States v. Chandler*, 326 F.3d 210, 223 (3rd Cir. 2003) ("We conclude that, while the government had a valid interest in keeping from the jury information from which it might infer Chandler's prospective sentence were she to be convicted, that interest did not trump Chandler's entitlement under the Confrontation Cause."); *United States v. Larson*, 495 F.3d 1094, 1105 (9th Cir. 2007) ("However, while the Government has an interest in preventing a jury from inferring a defendant's potential sentence, any such interest is outweighed by a defendant's right to explore the bias of cooperating witness who is facing a mandatory life sentence."); *United States v. Landerman*, 109 F.3d 1053, 1063 (5th Cir. 1997) ("In light of the fact that Ottesen's testimony was critical to the prosecution's case and the pending

charge carried the potential of a life sentence, we conclude that the district court erred in prohibiting the appellants from exploring before the jury the effect that Ottesen's pending criminal charge might have on his motivation to testify.")

Even if this Court declines to adopt such a holding, the record does not support the sweeping ruling that the government seeks here. In determining whether a trial court abuses its discretion in limiting cross-examination, the "key issue is whether the jury had enough information to assess the defense's theory of the case despite the limits placed on cross-examination." *United States v. Callahan*, 801 F.3d 606, 624 (6th Cir. 2015). "So long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross examination. *Id*., quoting *United States v. v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998).

From the record here, it is impossible to say whether the jury will have enough information to assess the defense's theory of the case or whether the jury will have adequate information to assess a particular witness's credibility, motives, or bias. At this point, neither the Court nor Mr. Floes know what witnesses the government will call at trial, what deals the government struck with those witnesses, the magnitude of any sentence reduction the witnesses believed they earned or believed they will earn, or the existence of any other evidence reflecting on their credibility, motives, or biases. Simply put, until the witness testifies, there is no basis in the record to support the sweeping pretrial ruling the government urges on this Court here.

Accordingly, the government's Motion in Limine #4 should be denied.

### III.   CONCLUSION

WHEREFORE, for the reasons set forth above, the government's Motions in Limine #1, #3, and #4 should be denied. As for Motion in Limine #2, Mr. Flores respectfully requests the Court permit additional briefing on the motion on or before April 9, 2021 and postpone ruling on the Motion until after April 9, 2021.

                          Respectfully submitted,

| | |
|---|---|
| s/Robert J. Cochran | s/David L. Doughten |
| Robert J. Cochran (OH 0055658) | David L. Doughten (OH 0002847) |
| Robert J. Cochran Law, LLC | 4403 St. Clair Ave. |
| 175 South Third Street, Suite 200 | Cleveland, OH  44103 |
| Columbus, OH 43215 | (216) 361-1112 |
| (614) 484-7089 | (216) 881-3928 Fax |
| (614) 573-7164 (fax) | ddoughten@yahoo.com |
| bob@rcochranlaw.com | |

COUNSEL FOR DEFENDANT NELSON ALEXANDER FLORES

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2021, a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

s/Robert J. Cochran<br>
Robert J. Cochran<br>
*Counsel for Defendant Nelson*<br>
*Alexander Flores*