**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**NELSON ALEXANDER FLORES,**<br>a/k/a Mula<br><br>**Defendant.** | **CASE NO. 2:17-CR-164(10)**<br><br>**JUDGE EDMUND A. SARGUS, JR.** |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States, by and through undersigned counsel, hereby submits the following sentencing memorandum to aid the Court in its consideration of sentencing issues in this case.

## BACKGROUND

On February 15, 2018, the grand jury in the Southern District of Ohio returned the Second Superseding Indictment in this case, which charges the defendant, Nelson Alexander Flores (a/k/a Mula), with one count of conspiracy to commit racketeering, in violation of 18 U.S.C. § 1962(d) [Count One].  The Second Superseding Indictment also includes a forfeiture allegation and a substitute assets clause requiring the defendant to relinquish his interest in any property associated with this offense.

On April 7, 2021, Mr. Flores entered a plea of guilty to Count One, consistent with the terms of the plea agreement into which the United States and the defendant entered pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.  The defendant also agreed to forfeit any right, title, and interest in any and all property that he acquired or maintained in connection with the charged criminal activity.

In pleading guilty, the defendant admitted that he unlawfully conspired to participate in the affairs of La Mara Salvatrucha, commonly known as MS-13, a racketeering enterprise that operated in the Southern District of Ohio and elsewhere.  Specifically, the defendant admitted that as a member of MS-13, he committed, and conspired with others to commit, at least three acts of extortion.

The Probation Officer released the final Presentence Investigation Report ("PSR") on May 10, 2021.  A sentencing hearing has been scheduled for Thursday, June 24, 2021.

## **PRESENTENCE INVESTIGATION REPORT AND RECOMMENDATION**

The Probation Officer calculated the defendant's advisory sentencing range under the United States Sentencing Guidelines ("Guidelines") as 63-78 months of imprisonment, based on a Total Offense Level of 20 and a Criminal History Category of V.  The Probation Officer did not identify any factors that could support a departure in this case, but she did note that the nature of the offense and the defendant's history and characteristics could warrant a variance.  Consistent with the Probation Department's new policy, the Probation Officer did not recommend a particular sentence, but she noted that restitution of $4,500 would be proper.

The United States agrees with the Probation Officer's factual findings and computation of the Guidelines range, and thus has no objections to the PSR.  The defendant raised two objections regarding the factual findings and computation of the Guidelines range.  More specifically, he objects to the characterization of his prior criminal record for discharging a firearm from a motor vehicle and being a felon in possession of a firearm, as outlined in Paragraph 110 of the PSR, and his criminal history scoring, as outlined in Paragraphs 109-116.  The defendant argues that the Court should depart downward under U.S.S.G. § 4A1.3(b) from a Criminal History Category of V to a Category III or IV.

As set forth below, the United States recommends that the Court adopt the factual findings and Guidelines calculations from the PSR and sentence Mr. Flores to a below-Guidelines term of sixty (60) months of imprisonment, in addition to imposing a restitution order of $4,500 and a $100 special assessment. The Government does not seek a term of supervised release given Mr. Flores's most-certain deportation following completion of his sentence.

## ANALYSIS AND RECOMMENDATION OF THE UNITED STATES

After *United States v. Booker*, 543 U.S. 220 (2005), district courts should engage in a three-step sentencing procedure. *See* U.S.S.G. § 1B1.1(a)-(c) (outlining the sentencing process). First, the Court should calculate the applicable Guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.").[1] Second, the Court should consider whether a departure from the Guidelines range is appropriate. *Rita v. United States*, 551 U.S. 338, 351 (2007). Third, the Court should consider "all of the § 3553(a) factors" in deciding what sentence to impose. *Gall*, 552 U.S. at 49–50. Under 18 U.S.C. § 3553, the Court is directed to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a). *Booker* requires that the sentence a district court imposes be reasonable. *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005). A sentence within the applicable Guidelines range is deemed presumptively reasonable. *Rita*, 551 U.S. at 347; *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006) ("We now join several sister circuits in crediting sentences properly calculated under the Guidelines with a rebuttable presumption of reasonableness.").

---

[1] The Supreme Court has made clear that the Guidelines are relevant throughout each step of this process. *See Gall*, 552 U.S. at 50 n.6 ("The fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.").

3

I. **Sentencing Guidelines Range**

The Probation Officer calculated Mr. Flores's Total Offense Level as 20. In light of his criminal record, the defendant was assigned to Criminal History Category V. This results in a sentencing range of 63 to 78 months of imprisonment.

The defendant has objected to his criminal history scoring.[2] He argues that a Criminal History Category of V over-represents the seriousness of his prior criminal history as well as the likelihood that he will commit further crimes. As such, he requests a downward departure in his criminal history category under U.S.S.G. § 4A1.3(b) to either a Criminal History Category IV (which yields a range of 51-63 months) or Category III (which yields a range of 41-51 months).

Section 4A1.3(b) of the Sentencing Guidelines states that a downward departure in criminal history category _may_ be warranted "[i]f reliable information indicates that the defendant's criminal history category _substantially_ over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b) (emphasis added). The application notes to this guideline further provide that "[a] downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." U.S.S.G. § 4A1.3 app. n.3.

---

[2] Aside from objecting to his overall criminal history score, the defendant also objects to the characterization of his prior convictions for discharging a firearm from a motor vehicle and being a felon in possession of a firearm, as outlined in Paragraph 110 of the PSR. Specifically, he objects to the statement that he admitted to Reno Police Officers that he was a "jumped-in" member of MS-13 and that he fired a gunshot at rival gang members. The Government submits that this is an accurate characterization of the events from that case, as it was included word-for-word in the defendant's prior PSR in Case No. 2:05-cr-018 in this district (unlawful reentry), to which he did not object at the time and which was adopted by the district court at the time of his sentencing. Regardless, the characterization of this prior case does not, in and of itself, affect the defendant's criminal history computation or his overall Guidelines range in this case.

4

As the Probation Officer noted, the defendant's objection fails under § 4A1.3(b) and Application Note 3.  For one thing, the convictions in question were for *serious* felony offenses, not simple misdemeanors.  One conviction was for assault with a deadly weapon, during which Mr. Flores assaulted a taxicab driver by kicking him in the face and attacking him with a knife.  (PSR, ¶ 109).  Although Mr. Flores was originally sentenced to a term of 60 days, his probation was later revoked, and he was re-sentenced to a term of three years in prison.  (*Id.*).  The second set of convictions were for discharging a firearm from a motor vehicle and being a felon in possession of a firearm, during which Mr. Flores fired a gunshot toward members of a rival gang.  (PSR, ¶ 110).  He was sentenced to a term of 28-72 months on each count.  (*Id.*).

To be sure, both convictions are older.  The first case was from 1993, and the second case was from 1995.  But there is *no* indication that Mr. Flores's criminal behavior stopped between those offenses and this racketeering conviction.  To the contrary, Mr. Flores repeatedly engaged in criminal behavior in the intervening years, including incurring convictions in 2003 for carrying a concealed weapon and in 2004 for being unlawfully present in the United States after being deported.  (PSR, ¶¶ 111-112).  He was sentenced to a term of 71 months of imprisonment for his unlawful reentry conviction, and his conduct in *this* case followed almost immediately on the heels of his release from BOP custody in 2010, while he was still on supervised release.

For all these reasons, the Court should overrule Mr. Flores's objections to the characterization of his criminal history and the computation of his criminal history score.

## II.    Possible Departures

The Probation Officer did not identify any factors that would warrant a departure under the Sentencing Guidelines.  The Government agrees that there is no basis for a departure from the otherwise applicable Guidelines range of 63-78 months.

### III.     Sentencing Factors in 18 U.S.C. § 3553(a)

In addition to the Guidelines, the Court must consider seven factors in determining a sentence:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes of sentencing; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range as set forth in the Guidelines; (5) the Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a). The United States submits that careful consideration of these factors supports a sentence of 60 months of imprisonment, which would fall slightly below the low-end of the applicable Guidelines range, in recognition of Mr. Flores's relative youth (age 22 and 24, respectively) when he committed two crimes which earned six criminal history points in this case.

### A.     The Nature and Circumstances of the Offense

Mr. Flores has admitted to his involvement with MS-13, a multi-national racketeering enterprise comprised primarily of immigrants and descendants of immigrants from El Salvador, Guatemala, and Honduras.  In 2012, the United States government designated MS-13 as a "transnational criminal organization."  It is the first and only street gang to receive that designation.  MS-13 has become one of the largest criminal organizations in the United States, with more than 10,000 members and associates estimated to be operating in at least 40 states. In Ohio and other states, MS-13 is organized into "cliques," which are smaller groups of MS-13 members and associates who act on behalf of the enterprise in a specific region, city, or part of a city.  This organizational structure facilitates the transmission of orders from MS-13 leadership in El Salvador to cliques in the United States and the transmission of money from cliques in the United States to gang leadership in El Salvador.

6

As set forth in the Second Superseding Indictment, Mr. Flores and his co-defendants knowingly and unlawfully conspired to participate in the affairs of the MS-13 enterprise in Ohio and elsewhere over the course of more than a decade. MS-13 members and associates in the Southern District of Ohio engaged in a wide range of criminal activity, including murder, drug trafficking, extortion, money laundering, assault, obstruction of justice, witness intimidation, weapons offenses, and immigration-related violations.

Mr. Flores adopted the goals of the enterprise by committing and conspiring with other MS-13 members and associates to commit several acts of extortion using threats of violence and death toward the victims and their family members. During each act of extortion, Mr. Flores called the relevant victim on the telephone and demanded cash payments in exchange for MS-13 not inflicting violence—up to and including death—upon the victim and their immediate family members. Acting out of fear, these victims ultimately paid the money, which totaled $4,500, at Mr. Flores's direction by wiring the funds to female intermediaries in El Salvador. A portion of the proceeds of this extortion was then used to support and promote MS-13's activities and operations in El Salvador and the United States. Based on the nature and circumstances of the defendant's racketeering offense, a sentence of 60 months is appropriate.

    **B.**  **The History and Characteristics of the Defendant**

As is true of every other defendant in this case, Mr. Flores's personal background provides a degree of mitigation. He was born and raised in Santa Ana, El Salvador. By age six, he began working with his father raising crops after school. Food was scarce, and the family home lacked electricity. His parents tried but failed to provide the necessities for Mr. Flores and his siblings. Despite these hardships, Mr. Flores reports that his parents were supportive and nurturing, and that they tried to provide a proper upbringing for him.

Outside of his home, Mr. Flores was confronted with the harsh realities of a country besieged by violence and gang activity. His mother was caught in crossfire and struck by a bullet when he was just ten years old. And two of his sisters were killed in a terrorist attack on a bus they were riding, which remains a source of great sadness all these years later. At the age of 16, the defendant entered the United States illegally, arriving first in Reno, Nevada, where he became involved in MS-13 and incurred his first of several criminal convictions in this country. Mr. Flores was ultimately deported. When he returned to the United States, he worked his way to Columbus, Ohio, where he continued to participate in MS-13. In Columbus, he incurred subsequent convictions for carrying a concealed weapon, unlawful reentry, and ultimately, this conviction for racketeering conspiracy. Mr. Flores appears to be in sound physical health, save for self-reported high cholesterol and back aches.

Like all criminal prosecutions, this case requires the Court to balance the nature and circumstances of Mr. Flores's offense with his history and characteristics to determine an appropriate sentence. In this matter, weighing the defendant's conduct – being an active member of MS-13 and committing several acts of extortion on behalf of the enterprise – against his criminal record and personal background suggests that a 60-month sentence is appropriate.

        **C.**     **The Statutory Purposes of Sentencing**

A sentence of 60 months of imprisonment would also serve the statutory purposes of sentencing. Such a sentence would reflect the nature and seriousness of Mr. Flores's offense and would be just punishment for his role in the charged racketeering conspiracy – a role that included him participating in several acts of extortion, each under threat of violence or death.

8

Sentencing the defendant to a meaningful term of incarceration would also provide a measure of deterrence. Dismantling MS-13 is one of the Department of Justice's highest priorities, and the resolution of this case should send a message that anyone who commits crimes on behalf of this dangerous organization will be arrested, prosecuted, and held accountable. Protection of the public from future harm is of paramount importance in this case. Mr. Flores terrorized several members of the Columbus, Ohio community under threat of extreme violence, and a 60-month sentence will ensure that he cannot do so for the foreseeable future. Finally, the sentence that the government is recommending would credit Mr. Flores for accepting responsibility and resolving his case short of trial.

        **D.**        **The Kinds of Sentences Available and the Sentencing Range**

The PSR accurately sets forth a Guidelines range of 63 to 78 months of imprisonment, which is within Zone D of the Sentencing Table. Under U.S.S.G. § 5C1.1(f), a term of incarceration is required. The United States submits that the recommended sentence of 60 months of imprisonment, which is just below the low-end of the Guidelines range, is reasonable in this case and reflects some of the defendant's arguments with respect to his age during two of his prior criminal convictions.

The United States is not seeking a term of supervised release. *See* U.S.S.G. § 5D1.1(c) (noting that a term of supervised release ordinarily should not be imposed in a case in which "supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment").

        **E.**        **The Sentencing Guidelines Policy Statements**

The Probation Officer did not identify any policy statements that could support a departure in this case. The United States agrees.

F.  **The Need to Avoid Unwarranted Sentencing Disparities**

A sentence of 60 months would be just below the low-end of the advisory Guidelines range (to account for the age of some of the defendant's prior convictions), consistent with the seriousness that Congress has ascribed to the charged racketeering offense, and appropriate given the facts and circumstances of this case. Therefore, the sentence that the United States is recommending would avoid *unwarranted* sentencing disparities.

G.  **The Need to Provide Restitution**

In light of the nature of Mr. Flores's offense, the United States believes that an order of restitution is mandatory. *See* 18 U.S.C. § 3663A.[3] As detailed in the PSR, the Court should order Mr. Flores to pay $4,500 in restitution to the three victims of his extortion.

## CONCLUSION

For the foregoing reasons, the United States submits that a sentence of 60 months of imprisonment is sufficient, but not greater than necessary, to satisfy the goals of sentencing. Accordingly, the United States respectfully requests that the Court adopt the recommendation set forth in this memorandum as reasonable and appropriate in this case.

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney


s/ Noah R. Litton
BRIAN J. MARTINEZ (CA 224587)
NOAH R. LITTON (0090479)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Office: (614) 469-5715
E-mail: Noah.Litton@usdoj.gov

---

[3] Mr. Flores agreed to pay restitution in Paragraph 9 of his Plea Agreement.

10

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum was served this 25th day of May, 2021, electronically upon all counsel of record in this case.

>
> s/ Noah R. Litton
> NOAH R. LITTON (0090479)
> Assistant United States Attorney